Opinion for the Court filed by Circuit Judge WALD.
 

 WALD, Circuit Judge:
 

 On December 4, 1989, appellant Jerome Young pled guilty to conspiracy to manufacture and distribute 100 grams or more of pure phencyclidine (“PCP”), 21 U.S.C. §§ 846, 841(b)(l)(A)(iv), and to use of a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c). The district court subsequently sentenced Young to 188 months of confinement on the drug count and 60 months on the gun charge, with the sentences to run consecutively. Young now appeals from the district court’s decision to enhance his sentence by two levels because he used a “special skill” to facilitate the conspiracy to manufacture and distribute PCP. Because we find that Young did not use a “special skill” within the meaning of Sentencing Guidelines § 3B1.3, we reverse his sentence on the drug count and remand for resentencing in accordance with this opinion.
 

 I.
 

 In the fall of 1989, the Metropolitan Police Department and the Drug Enforcement Agency designed an undercover operation to infiltrate a PCP-manufacturing operation. After a confidential informant told the government that an individual named Gregory Marshall was looking for some potassium cyanide to complete the manufacture of PCP, Detective Henry Norris assumed an undercover role as a chemical supplier and agreed to supply Marshall with the cyanide in exchange for a portion of the PCP. On September 5, 1989, Norris delivered the cyanide to Marshall and appellant Young, an accomplice of Marshall’s. Young then took the cyanide to his farm in Nanjemoy, Maryland.
 

 Young subsequently retrieved other chemicals from a storage shed in Prince George’s County and combined them, with the cyanide, to manufacture PCC crystals, the first-stage product in the manufacture of PCP. Several days later, Marshall called Norris asking for benzene to complete the PCP manufacturing process. Finally, on September 13, the police arrested Young and Marshall in a van containing over 700 grams of PCC crystals, 16 ounces of liquid PCP in a Pepsi bottle, and a semi-automatic pistol. Young subsequently pled guilty to one count of conspiracy to manufacture and distribute PCP and one count of possession of a firearm in aid of drug trafficking.
 

 At the sentencing hearing, the court denied the government’s request for a two-level enhancement pursuant to § 3B1.1 of the Sentencing Guidelines for appellant’s leadership role in the conspiracy; it found that Marshall, not appellant, was the real leader. The court also granted a two-level reduction in appellant’s sentence for acceptance of responsibility under § 3E1.1. But the court added a two-level enhancement for “special skill” under § 3B1.3, explaining that appellant
 

 knew how to manufacture PCP under the definition given of special skill and the examples that would require someone who has some special knowledge beyond that of the general public and some level of education, according to the examples^] I’m going to apply the two points under special skill, because it appears to the Court from its knowledge of the testimony and statements not only that were made in this case, but in other cases, the manufacture of PCP is a rather complex chemical process, can be dangerous, and involves a fairly sophisticated knowledge of chemistry.
 

 Although it can be gained from reading materials and textbooks in how to do
 
 *1508
 
 it, it still does require specialized knowledge certainly beyond that of any member of the general public. So I will overrule the objection of the defendant to applying the use of a special skill, 3B1.3, and have two points assessed for that.
 

 Transcript of Sentencing Hearing at 6. Appellant challenges only the special skill enhancement on appeal.
 

 II.
 

 Section 3B1.3 of the Sentencing Guidelines states:
 

 If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed in addition to [an upward adjustment for playing an aggravated role in the offense], nor may it be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.
 

 U.S.S.G. § 3B1.3 (1989). The commentary further explains that “ ‘[s]pecial skill’ refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.”
 
 Application Note 2,
 
 U.S. S.G. § 3B1.3 (1989).
 

 Appellant argues that § 3B1.3 is unconstitutionally vague as applied to his situation because he had no formal training as a “chemist” and no way of predicting that a judge would find that he had a “special skill” not possessed by the “general public.” Appellant also argues that there is no proof that he abused a “special skill” within the meaning of § 3B1.3. For the reasons discussed below, we find merit in appellant’s second argument and, therefore, have no need to address his constitutional argument.
 

 “This Court will uphold the district court’s sentence so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous.”
 
 United States v. Foster,
 
 876 F.2d 377, 378 (5th Cir.1989);
 
 see also United States v. Hubbard,
 
 929 F.2d 307, 310 (7th Cir.1991) (“We review the District Court’s factual findings for clear error; the legal meaning of the term ‘special skill’ we determine de novo.”). The district court in this case made several factual findings that are not clearly erroneous — specifically, that “the manufacture of PCP is a rather complex chemical process” and that appellant’s ability to manufacture PCP set him apart from the general public.
 
 [1]
 
 Unlike the district court, however, we do not find these facts sufficient to justify the special skill enhancement under § 3B1.3.
 

 The government argues that appellant used his “special skill” as a “chemist” to manufacture PCP. There is, however, no evidence in the record that appellant is a “chemist” in the ordinary sense of that term. In fact, there is no evidence that appellant knows anything about any chemical or chemical process other than how to manufacture PCP. The government relies nonetheless on the following syllogism: (1) the manufacture of PCP is a complex and dangerous process requiring the delicate mix of several chemicals,
 
 see United States v. Gates,
 
 807 F.2d 1075, 1078-79 (D.C.Cir.1986), ce
 
 rt. denied,
 
 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987); (2) the general public does not know how to manufacture PCP; (3) appellant does know how to manufacture PCP; (4) therefore, in manufacturing PCP appellant had to use a special skill that is not possessed by the general public. It follows, of course, from the government’s reasoning that if appellant has earned the special skill enhancement, anyone who manufactures PCP also merits it because the manufacture of PCP, by definition, requires special skill.
 

 The syllogism, moreover, cannot easily be confined to the manufacture of PCP. Employing the same logic, the government could also argue that a § 3B1.3 enhance
 
 *1509
 
 ment is due whenever an offense involves some skill that the general public does not possess: counterfeiting U.S. currency or manufacturing a bomb are two likely examples. In essence, the government is contending that if the offense is a difficult one to commit, the mere ability to commit it evidences a “special skill” sufficient to justify an enhancement under § 3B1.3. We reject this line of reasoning, however, because we believe it to be based on an impermissibly broad interpretation of § 3B1.3 that leads to results not contemplated by the Sentencing Commission. For reasons discussed below, we hold that the § 3B1.3 enhancement applies only if the defendant employed a “special skill” in the form of a pre-existing, legitimate skill not possessed by the general public to facilitate the commission or concealment of a crime.
 

 In this case, appellant Young pled guilty to manufacturing 868 grams of PCP, which has a base offense level of 34.
 
 [2]
 

 See
 
 U.S. S.G. §§ 2D1.1(a)(3) & (c)(5) (1989). It is significant that neither the underlying criminal statute nor the Sentencing Guidelines distinguish between the manufacture and distribution of PCP: the guideline offense level for both manufacturing and distribution is identical and is determined by the quantity of PCP manufactured or distributed.
 
 See
 
 U.S.S.G. § 2D.l.l(a)(3) (1989); 21 U.S.C. § 841(b)(l)(A)(iv). Thus, both Congress and the Sentencing Commission have determined that, other things being equal, those who manufacture PCP and those who distribute it deserve equal sentences, and the severity of those sentences should depend on the quantity of PCP manufactured or produced.
 

 Acceptance of the government’s contention that the ability to manufacture PCP is a “special skill” within the meaning of § 3B1.3 would, however, result in an across-the-board divergence in the sentences for the manufacture and distribution of PCP. Anyone convicted of the manufacture of PCP would receive the PCP base offense level plus a two-level special skill enhancement. Unless other enhancements not relevant here applied, a person convicted of the distribution of PCP, on the other hand, would receive only the PCP base offense level. Because there is no indication that the Sentencing Commission intended this disparate result, we are reluctant to interpret § 3B1.3 in such a way.
 

 Section 3B1.3 provides a two-level enhancement “[i]f the defendant ... used a special skill, in a manner that significantly facilitated the commission or concealment of the offense_” U.S.S.G. § 3B1.3 (1989). The use of the word “facilitate”— which means “to make easier,”
 
 see Webster’s New Collegiate Dictionary
 
 (1977)— is important in this context. It indicates to us that the Sentencing Commission assumed that the defendant knows how to commit the offense in the first place and that he uses a “special skill” to make it
 
 easier
 
 to commit the crime. Thus, the “special skill” necessary to justify a § 3B1.3 enhancement must be more than the mere ability to commit the offense; it must constitute an additional, pre-existing skill that the defendant uses to facilitate the commission or concealment of the offense. In this case, for example, the special skill enhancement would have been appropriate if appellant had been a bona fide pharmacist or a chemist who used his special knowledge of drugs or chemistry to facilitate the manufacture of PCP.
 

 The commentary to § 3B1.3 reinforces this conclusion. All of the examples of “special skill” — “pilots, lawyers, doctors, accountants, chemists, and demolition experts” — involve legitimate pre-existing skills “not possessed by members of the general public and usually requiring substantial education, training or licensing,” that may be abused to facilitate the commission of a crime.
 
 See Application Note 2,
 
 U.S.S.G. § 3B1.3 (1989). In addition, the commentary explains that the special skill enhancement “applies to persons who
 
 abuse
 
 their positions of trust or their spe
 
 *1510
 
 cial skills to facilitate significantly the commission or concealment of a crime. Such persons generally are viewed as more culpable.”
 
 Background Commentary,
 
 U.S. S.G. § 3B1.3 (1989) (emphasis added).
 
 [3]
 
 Nothing in the commentary suggests that § 3B1.3 applies to a criminal who, like appellant, bones up on the tricks of his trade and becomes adept at committing a crime that the general public does not know how to commit. To the contrary, the commentary indicates that § 3B1.3 was intended to punish those who abuse their special skills by using them to facilitate criminal activity rather than legal, socially beneficial activity.
 
 [4]
 

 The vast majority of prior cases in which special skill enhancements have been upheld are consistent with our understanding of § 3B1.3. In fact, the cases provide many good illustrations of what we believe to be the proper application of the section. In
 
 United States v. Sharpsteen,
 
 913 F.2d 59, 62 (2d Cir.1990), the Second Circuit upheld a § 3B1.3 enhancement because the appellant’s expertise as a printer was a special skill that facilitated the conspiracy to counterfeit U.S. currency.
 
 Cf. United States v. Foster,
 
 876 F.2d 377, 378 (5th Cir.1989) (reversing special skill enhancement given to a printer convicted of a counterfeiting offense because he had only photographed the notes and there was no evidence that he “possessed any special skill in photographing”). And in
 
 United States v. Hummer,
 
 916 F.2d 186, 191 (4th Cir.1990), ce
 
 rt. denied,
 
 — U.S. -, 111 S.Ct. 1608, 113 L.Ed.2d 670 (1991), the Fourth Circuit affirmed a special skill enhancement awarded to a self-taught inventor of patented tamper-resistant lids who used his special knowledge about tampering devices to send credible extortion letters threatening to poison Coca-Cola products with cyanide.
 
 See also United States v. Sloman,
 
 909 F.2d 176, 181 (6th Cir.1990) (upholding a § 3B1.3 enhancement where the appellant used his special skills as an insurance adjuster to facilitate an insurance fraud scheme). Similarly, the Seventh Circuit, in
 
 United States v. Hubbard,
 
 929 F.2d 307, 309 (7th Cir.1991), affirmed a special skill enhancement where the appellant, who had been convicted of constructing one dozen bombs, “had an electrical and engineering background that provided him with the expertise to manufacture the bombs.”
 
 But see United States v. Talbott,
 
 902 F.2d 1129, 1133 (4th Cir.1990) (affirming § 3B1.3 enhancement where defendant “used spe
 
 *1511
 
 cial skills in manufacturing the pipebombs” and had a special skill “in changing his identity [because] he had been able to purchase firearms under a different name”). To the limited extent that some courts have upheld § 3B1.3 adjustments where the defendant’s only special skill was his ability to commit a crime that the general public could not commit, we demur from their reasoning.
 

 III.
 

 Section 3B1.3 properly applies when a defendant uses some pre-existing, legitimate specialized skill not possessed by the general public to facilitate the commission or concealment of a crime. Section 3B1.3 was improperly applied in this case, however, because the government did not establish that appellant was a “chemist” or that he had any specialized knowledge of chemistry beyond that needed to make PCP. As a result, the government did not establish that appellant used a “special skill” in chemistry to facilitate the commission of the offense of PCP manufacturing. Instead, the government demonstrated only that appellant knew how to commit the base offense of manufacturing PCP. We find that proof insufficient to justify a special skill enhancement under § 3B1.3 and remand for resentencing on the PCP manufacturing count.
 

 It is so ordered.
 

 [1]
 

 . We are not persuaded by appellant’s claim that the district court improperly relied on extra-record evidence because the record here was replete with evidence documenting the complexities involved in the manufacturing process.
 

 [2]
 

 . Actually, appellant pled guilty to one count of conspiracy to manufacture and distribute PCP. But under the guidelines, the offense level for a drug trafficking conspiracy is the offense level for the underlying drug offense.
 
 See
 
 U.S.S.G. § 2D 1.4 (1989);
 
 see abo
 
 21 U.S.C. § 846. Thus, our reasoning is the same as if appellant had pled guilty to one count of manufacturing PCP.
 

 [3]
 

 . Other provisions of the guidelines also indicate that § 3B1.3 was intended to punish defendants who abuse their special knowledge. Section 5H1.2 states, for example, that although "[e]ducation and vocational skills are not ordinarily relevant in determining whether a sentence should be outside the guidelines, [] the extent to which a defendant may have
 
 misused special training or education
 
 to facilitate criminal activity is an express guideline factor [under] § 3B1.3[.]” U.S.S.G. § 5H1.2 (1989) (emphasis added).
 

 [4]
 

 . Although not specifically applicable in this case, the caveat in § 3B1.3 further supports our conclusion that § 3B1.3 was intended to punish those who abuse a legitimate skill not possessed by the general public. That caveat states that the special skill enhancement "may [not] be employed if an
 
 abuse
 
 of trust or skill is included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3 (1989) (emphasis added). For example, the tax fraud guideline provides a higher base offense level for defendants "in the business of preparing or assisting in the preparation of tax returns” than for other defendants who commit the crime.
 
 See
 
 U.S.S.G. § 2T1.4(b)(3) (1989). Consequent-Iy, an accountant who is convicted of assisting the commission of tax fraud should not receive the special skill enhancement because abuse of her skill in accounting is included in the base offense level (that is, tax fraud by one in the business of preparing tax returns) and should not be "double counted” via the § 3B1.3 enhancement.
 
 See Application Note 3,
 
 U.S.S.G. § 2T1.4 (1989).
 

 As this example illustrates, the "special skill” that should not be double counted via the § 3B1.3 enhancement is the special skill in accounting that is used or, more accurately, abused in the commission of tax fraud; it is not the ability to commit the tax fraud itself. In contrast, there is only one base offense level for the manufacture of PCP, and it does not vary depending on whether the defendant abused a specialized skill in chemistry in committing the offense. Thus, the caveat in § 3B1.3 does not bar the application of the special skill enhancement in PCP manufacturing cases where the defendant has
 
 abused
 
 a special skill in manufacturing the PCP. The special skill enhancement is inapplicable in this case, however, because, as discussed above, the government did not show that appellant abused any such special skill, in chemistry or otherwise.