UNITED STATES of America,

v.

Terrance Kevin SPRIGGS,
a/k/a Bob, Appellant.

No. 92–3016.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 11, 1993.

Decided June 18, 1993.

Allen E. Burns, Asst. Federal Public Defender, with whom A.J. Kramer, Federal Public Defender, were on the brief for appellant.

Stephen P. Anthony, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher, Thomas C. Black, and Eileen C. Mayer, Asst. U.S. Attys., were on the brief for appellee.

Before RUTH BADER GINSBURG, SILBERMAN, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

In November 1991, Terrance Kevin Spriggs was convicted of four counts of distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and of one count of conspiracy to distribute a kilogram or more of heroin in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(i). Spriggs appeals his conviction on the grounds that the trial judge improperly admitted various evidence and gave a faulty charge to the jury. He also argues that the district court lacked sufficient probative evidence upon which to enhance his base offense level. For the reasons given below, none of these contentions is persuasive.

I. BACKGROUND

At trial the Government presented evidence that the appellant was engaged in a three-year conspiracy to distribute heroin by the ounce. Randolph Campbell, a co-conspirator who cooperated with the Government in an effort to reduce his sentence, testified that between April 1988 and July 1990 he and the appellant sold "about eight ounces" of heroin each week.

The evidence against the appellant established that in July 1990 he sold 1.617 grams

of 10 percent pure heroin to an undercover law enforcement officer. In an unrelated incident that same month, Campbell was also arrested on drug charges. Campbell then agreed to cooperate with the Drug Enforcement Agency in setting up undercover drug transactions with the appellant.

On three occasions between December 1990 and March 1991, the appellant sold heroin to an undercover DEA agent. In an effort to determine the appellant's source of drugs, DEA agents secured search warrants (in April 1991) for two apartments that the appellant was known to frequent. One was in North East Washington, D.C. and the other in Lanham, Maryland. At the latter location, DEA agents found and seized the appellant and 30 grams of 67% pure heroin, $1,789 in cash, and various drug paraphernalia. At the D.C. apartment DEA agents found $544 in cash, a tax form with appellant's name on it, and a quantity of small plastic bags, some of which contained heroin residue.

## II. Analysis

The appellant challenges his conviction on five grounds: (1) that the DEA agents failed to knock and announce properly before entering the apartment in which they found him; (2) that the prosecutor improperly "bolstered" Campbell's testimony by introducing evidence of Campbell's plea agreement; (3) that the trial judge improperly admitted certain expert testimony; (4) that the judge should have charged the jury specially on weighing the testimony of an addict informer; and (5) that the judge improperly charged the jury on the reasonable doubt standard. In addition, the appellant contends that the district court had insufficient evidence to enhance his base offense level.

### A. Knock and announce

At a suppression hearing prior to trial DEA special agent Mark Connell described the search of the Maryland apartment. According to Connell the agents arrived at the apartment between 7:30 and 7:45 on a weekday morning. Special agent Ron Kahn knocked once on the door and announced "Police, search warrant." Connell testified

that Kahn's announcement "wasn't a holler, but ... it was slightly above a normal tone of voice," and that it was "louder than [a] normal voice ... but not a yell." He conceded that it was "possible" that Kahn's voice would not have reached a far bedroom. After waiting approximately 15 seconds after the knock and announcement without having received any response, the agents forced open the door. Inside they found and arrested the appellant as he and his wife came out of a bedroom 25 to 35 feet from the door.

Under 18 U.S.C. § 3109, a law enforcement officer may forcibly enter a house in order to execute a search warrant only "if, after notice of his authority and purpose, he is refused admittance." As this court has observed, "the phrase 'refused admittance' is not restricted to an affirmative refusal, but encompasses circumstances that constitute constructive or reasonably inferred refusal." *United States v. Bonner*, 874 F.2d 822, 824 (D.C.Cir.1989) (citation omitted). "The time that section 3109 requires officers to wait before they may construe no response as a denial of admittance depends largely on factual determinations made by the trial court." *United States v. Davis*, 617 F.2d 677, 695 (D.C.Cir.1979).

The appellant initially contends that the DEA agents violated § 3109 because the occupants of the apartment were unlikely to have heard "a single knock and a modulated announcement" made in the "early morning." The appellant further contends that the DEA agents did not wait long enough after announcing themselves before forcing open the door of the apartment.

In our view the district court had a substantial basis to conclude that the knock and announcement were proper and the delay before entry reasonable. Clearly the agents did not act unreasonably in entering the apartment after knocking and announcing themselves only a single time. *See Davis*, 617 F.2d at 695 (upholding entry after single announcement). One need seek admittance only once in order to be refused. Credible testimony also shows that the announcement was reasonably audible—"slightly above a normal tone of voice"—and thus apparently

sufficient to alert the residents of the apartment. *See United States v. Leichtnam,* 948 F.2d 370, 372 (7th Cir.1991) (upholding search after police announced themselves in "a voice slightly louder than might be used in conversation"). Finally, as to the time of day, it is hardly unreasonable to assume that someone will be awake and responsive by 7:45 a.m. on a weekday.

With respect to the delay before entering, under our case law the agents were justified in concluding that they had been constructively refused admittance when the occupants failed to respond within 15 seconds of their announcement. In *Davis,* we upheld a district court determination that officers could reasonably infer refusal after a delay of 15 seconds. 617 F.2d at 695. In *Bonner,* we held that even a delay of 11 or 12 seconds before entry was proper where the officers heard suspicious noises inside the house, and noted that in the absence of noises only "a few additional seconds' delay clearly would have supported the conclusion that the officers had been refused admittance." 874 F.2d at 826. In this case the officers did wait a few seconds longer than had the police in *Bonner.*

*United States v. Rodriguez,* 663 F.Supp. 585, 587–88 (D.D.C.1987) and *Griffin v. United States,* 618 A.2d 114 (D.C.App.1992), upon which the appellant relies, are clearly not applicable here. The delay in *Rodriguez* was only three to five seconds. 663 F.Supp. at 585. In *Griffin* the delay was fully 30 seconds, but the court found that insufficient only because the knock and announcement occurred at 1:30 in the morning, when it was not reasonable to assume that the occupants were awake and able to respond promptly. *Cf. Griffin,* 618 A.2d at 127 (Terry, J., dissenting) (agreeing that "very late hour" made *Griffin* "a close case"). Accordingly, the trial judge in the present case did not err in finding that the DEA agents had fulfilled the knock and announcement requirement of § 3109.

### B. *Bolstering*

During Campbell's direct testimony, the prosecution inquired at some length about the witness's drug problems and his coopera-

tion with the Government. Campbell acknowledged that he had twice been convicted of possession with intent to distribute heroin, that he faced a potentially long prison term for each offense, and that his sentencing had been postponed until after he testified in this case. In response to the prosecutor's questions, Campbell also testified that he had entered into a cooperation agreement with the Government by the terms of which he could be prosecuted for perjury if he lied, and that pursuant to that agreement he had testified against the appellant before the grand jury that indicted him. Finally, Campbell acknowledged that he hoped his cooperation in this case would earn him a lighter sentence. The appellant's trial counsel made no objection to any of this testimony, so that reversal is not indicated unless it was plain error for the district court to have admitted the testimony. *See United States v. Thomas,* 896 F.2d 589, 591 (D.C.Cir.1990).

■ The appellant argues first that Campbell's testimony should not have been admitted because it unfairly "bolstered" his credibility, which had not been attacked, in violation of Federal Rule of Evidence 608(a)(2). *See* 1 McCormick, Evidence § 47, at 172 (4th ed. 1992). Specifically, he relies upon the Second Circuit rule that although the Government may risk impeaching its own witness by introducing on direct examination evidence of his having agreed to cooperate, it may not introduce aspects of the cooperation agreement that could bolster the witness's credibility unless or until the defense attacks his or her credibility. *See United States v. Edwards,* 631 F.2d 1049, 1051–52 (2d Cir. 1980). *See also United States v. Borello,* 766 F.2d 46, 56–58 (2d Cir.1985) (reversible error for trial court to have admitted full cooperation agreement into evidence in absence of prior attack on witness's credibility).

The Second Circuit itself acknowledges that evidence of a cooperation agreement can also impeach, rather than enhance, the credibility of a witness. The agreement obviously gives the witness an incentive to incriminate the defendant, guilty or not, in the hope of leniency for himself. *Edwards,* 631 F.2d at 1051. Therefore, even that court allows the prosecution to introduce at least some com-

ponents of the agreement in its case-in-chief, in order to avoid "an inference by the jury that the Government is attempting to keep from the jury the witness'[s] bias." *Id.* at 1052 (quoting *United States v. Singh,* 628 F.2d 758, 761 (2d Cir.1980)). Nevertheless, under *Edwards* any clause that the court thinks more likely to bolster than to impeach the witness's credibility is inadmissible, including clauses that "the agreement was revocable if the witness perjured himself, that upon such perjury the witness might be subject to prosecution . . ., and that anything the witness said could be held against him." 631 F.2d at 1052. (The Second Circuit has since noted that its distinction between "impeaching" and "bolstering" provisions of a cooperation agreement has proven difficult to administer in practice. *See United States v. Cosentino,* 844 F.2d 30, 33 n. 1 (2d Cir.1988): "Were we writing on a blank slate, we might have followed the other circuits that avoid the distinctions we have required judges and lawyers to make during the heat of trial.")

This court has not yet addressed the exclusionary aspect of the *Edwards* rule, and the other circuits are divided. Two courts of appeals appear to agree with the Second Circuit's approach, *see United States v. Wallace,* 848 F.2d 1464, 1474 (9th Cir.1988); *United States v. Cruz,* 805 F.2d 1464, 1479–80 (11th Cir.1986), but at least seven courts of appeals have rejected its reasoning and permitted the prosecution on direct examination to introduce the witness's cooperation agreement in its entirety. *See, e.g., United States v. Lord,* 907 F.2d 1028, 1031 (10th Cir.1990); *United States v. Drews,* 877 F.2d 10, 12 (8th Cir.1989); *United States v. Edelman,* 873 F.2d 791, 795 (5th Cir.1989); *United States v. Mealy,* 851 F.2d 890, 898–900 (7th Cir.1988); *United States v. Martin,* 815 F.2d 818, 821 (1st Cir.1987); *United States v. Townsend,* 796 F.2d 158, 162–63 (6th Cir. 1986); *United States v. Henderson,* 717 F.2d 135, 137–38 (4th Cir.1983). *See also United States v. Oxman,* 740 F.2d 1298, 1302–03 (3d Cir.1984) (entire plea agreement admissible at least where Government could anticipate later effort to impeach witness), *vacated on other grounds sub nom. United States v. Pflaumer,* 473 U.S. 922, 105 S.Ct. 3550, 87 L.Ed.2d 673 (1985).

We think the majority position is the better reasoned. Simply put, we are not persuaded that evidence of the contents of a cooperation agreement · unduly bolsters the credibility of a Government witness. First, insofar as the agreement provides that if the witness lies the agreement is revokable, that the witness is liable to prosecution for perjury, and that his perjurious testimony may be used against him, it adds nothing to the law—as the defense is free to bring out upon cross-examination. Therefore, the agreement provides no special incentive for the Government witness to testify truthfully; hence, the jury is not likely to place special credence in the witness merely because of the terms of the agreement. Furthermore, that the Government may (obviously) impose a sanction upon the witness if he lies does nothing to enhance the Government's ability to detect whether he is in fact lying; again the terms of the cooperation agreement should do nothing to enhance the witness's credibility. Finally, at least in the present case there is nothing in the agreement or in the prosecutor's direct examination on that subject to "imply that the government had special knowledge" of the witness's veracity. *Henderson,* 717 F.2d at 138.

In sum, we see no good reason to believe that the allegedly bolstering provisions of the agreement are likely to enhance the witness's credibility in the eyes of the jury. Accordingly, we hold that the district court did not err, let alone plainly err, in allowing the witness to testify about the terms of his cooperation agreement with the Government.

■ Separately, the appellant contends that the trial court plainly erred in admitting Campbell's statement that he had testified against the appellant before a grand jury. First, the appellant says, this statement "suggested that the Grand Jurors, who had indicted appellant, had believed the witness . . . ." The trial judge instructed the jury not to consider the indictment as evidence, however, so there is no logical reason to think that the jury accorded the witness's testimony undue weight simply because it may also have formed part of the basis for the indictment. Second, the appellant ar-

gues that Campbell's statement that he had testified before a grand jury constituted evidence of a prior consistent statement, inadmissible as hearsay. Fed.R.Evid. 802. This contention clearly lacks merit, since the witness merely confirmed that he had appeared before a grand jury and made no reference to the content of his testimony.

### C. *Detective Rawls's testimony*

██ Detective Dwight Rawls, appearing as an expert witness for the prosecution, testified on various aspects of drug trafficking. Detective Rawls had debriefed Campbell on two occasions and participated in the raid on the D.C. apartment. He did not testify about his personal involvement in the case during direct examination, but defense counsel brought that out during cross-examination.

In response to a prosecution question about the effects of heavy drug use, Rawls testified that a heavy user of heroin and cocaine could appear to function normally. While noting that he was "not an expert in [drug] effect and usage," Rawls explained that heavy users tend to develop a tolerance for opium-based drugs such as heroin. He also said that an "upper" drug such as cocaine would tend to counteract a "depressant" drug such as heroin. Defense counsel objected to this testimony on the ground that Rawls was admittedly not an expert on drug usage. The trial judge nonetheless allowed the testimony based upon Rawls's experience as a law enforcement officer who deals with drug addicts.

The appellant argues that Rawls's testimony was improper for several reasons. First, he renews his contention that Rawls was unqualified to express his views on drug tolerance, and that the trial judge should therefore have excluded this testimony under Federal Rule of Evidence 701, which sets standards for "lay opinion" evidence. As we understand the record, however, Rawls's statement that he was "not an expert in effect and usage" merely clarified and limited, but did not disclaim, his expertise. Rawls was clearly not testifying as a clinical expert—one who relies upon controlled studies and medical analyses—but rather as a police expert—one who has extensive experience in dealing with heavy drug users and who has observed their patterns of behavior. For that task he had ample knowledge and qualifications.

Second, the appellant contends that it was improper to allow Rawls to testify because he appeared as both a "lay witness" to the facts at issue in the case and as an expert witness. He relies upon *United States v. Beach,* 466 A.2d 862 (D.C.App.1983), in which a single detective testified both as an arresting officer and as an expert on drug trafficking. The District of Columbia Court of Appeals held that it is improper for a witness to appear in such a dual capacity because the detective's status as an expert could bolster his credibility as a lay witness.

Regardless of the wisdom of the rule in *Beach,* the appellant failed properly to raise this bolstering objection below. Before the district judge, trial counsel merely contended that Detective Rawls should be disqualified as an expert witness because he was "intimately involved" with the case. He never argued that it was improper for Rawls to testify as a lay witness and as an expert witness; in fact, he conceded that Rawls was appearing only as an expert witness. Rawls ultimately testified as a lay witness only upon cross examination by the appellant's counsel. We cannot now say that it was plain error for the trial judge to have admitted Rawls's factual testimony at the instance of the appellant's own attorney.

### D. *"Addict informer" jury instruction*

██ The appellant contends that it was plain error for the trial court not to have alerted the jury sua sponte to the unreliability of the testimony of an "addict informer" such as Campbell. Putting aside the factual question whether Campbell was in fact a drug addict, this court has never adopted a rule requiring a trial court sua sponte to give a special charge regarding the credibility of an informer who is also a drug addict. *Cf. United States v. Kinnard,* 465 F.2d 566, 572 (D.C.Cir.1972) (Bazelon, C.J., concurring) (urging adoption of a mandatory addict informer charge). Furthermore, the trial judge in this case instructed the jury that

testimony from an accomplice (*i.e.*, Campbell) "should be received with caution and scrutinized with care." Accordingly, it is most unlikely that Campbell's inculpatory testimony was in any way unfairly prejudicial to the appellant's defense.

### E. *Reasonable doubt instruction*

■ The appellant claims that the trial judge improperly "denigrated" the reasonable doubt standard when he said in the course of charging the jury, "some of these legal terms are kind of ridiculous, but that is what a reasonable doubt is." The appellant's trial counsel did not object to this comment at trial, so again we review only for plain error.

Taken in context, the judge's aside neither denigrated nor invited the jury to lighten the Government's burden. The trial judge seems merely to have been apologizing for the apparent circularity of the standard definition of a "reasonable doubt" as "a doubt for which you can give a reason." Furthermore, the judge later clarified this standard, emphasizing the gravity of the jurors' role and the weightiness of the Government's burden in conformity with Redbook instruction No. 2.09. Accordingly, the judge's quip about the labored definition of "reasonable doubt" does not render the instruction plainly erroneous.

### F. *Sentencing*

■ Because he found that the appellant had distributed at least ten kilograms of heroin during the three-year conspiracy, the trial judge enhanced his base offense level from 32 to 36. *See* U.S.S.G. § 2D1.1(c)(4). First, the judge tentatively credited co-conspirator Campbell's testimony that he and the appellant had sold approximately eight ounces of heroin per week. Eight ounces of heroin per week over the three-year term of the conspiracy amounts to more than 23 kilograms of heroin. Then the judge determined that, because of the rough and ready nature of this estimate, he could say with confidence only that the appellant had distributed at least ten kilograms of heroin—the minimum amount necessary for an offense level of 36.

The appellant contends that Campbell's testimony is inadequate evidence to support

the district court's sentencing decision. We uphold a sentencing decision "so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous." *United States v. Young,* 932 F.2d 1510, 1512 (D.C.Cir.1991). Campbell's testimony, interpreted conservatively as it was by the district court, provides ample support for enhancing the appellant's base offense level. The appellant presents no compelling reason why the district court's reliance upon this testimony was clearly erroneous.

### III. CONCLUSION

The district court correctly concluded that the DEA agents met the requirements of 18 U.S.C. § 3109 in executing the warrant at the Maryland apartment. The district court also properly permitted the informer Campbell to testify about his cooperation agreement with the Government and Detective Rawls to testify about his knowledge of the effect of drugs, and made no error either in cautioning the jury about Campbell's testimony or in instructing the jury on the reasonable doubt standard. Finally, the court invoked sufficient evidence to support its decision to enhance the appellant's sentence. Accordingly, the appellant's conviction and sentence are in all respects

*Affirmed.*