UNITED STATES of America, Appellee,

v.

Francisco Alberto YNFANTE, Appellant.

Nos. 95–3062, 95–3063.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1996.

Decided March 15, 1996.

---

M. Elizabeth Kent, appointed by the court, argued the cause and filed the briefs for appellant Francisco Alberto Ynfante. Mona Asiner, appointed by the court, was on the brief for appellant Wilfredo DeLeon.

John Crabb, Jr., Assistant United States Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher and John P. Dominguez, Assistant United States Attorneys, were on the brief.

Before: SILBERMAN, BUCKLEY and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Following a remand for resentencing, appellants Francisco Ynfante and Wilfredo DeLeon appeal from the district court's decision to reimpose the same sentences.[1]  Ynfante

---

1. *United States v. DeLeon*, Nos. 91–3297 & 92–3328, 993 F.2d 913 (D.C.Cir. Apr. 15, 1993)   (unpublished decision).

and DeLeon agreed to sell two ounces of crack to a police agent. When the buyer could not come up with enough money to make the purchase, the parties agreed to a one-ounce deal instead. Appellants contend that their sentences should have been determined by the one ounce they actually delivered. We hold that under the sentencing guidelines in effect before November 1995, the district court properly considered the additional ounce specified in the original agreement in setting appellants' base offense levels. Accordingly, we affirm.

## I.

A jury convicted Ynfante and DeLeon of distributing crack to Jose Cruz, a civilian agent of the police. On the instructions of officer Dale Sutherland, Cruz met Ynfante and agreed to purchase two ounces of crack from him. When Cruz asked Sutherland for cash to consummate the deal, however, there was not enough money in the police station's confidential fund to cover the agreed-upon price. Sutherland therefore told Cruz to offer to purchase one ounce instead of two. After Ynfante and DeLeon accepted Cruz's new offer, DeLeon went to the nearby apartment of Santos Calderon to procure the crack while Ynfante and Cruz waited in a car. DeLeon handed one ounce of crack through the car window to Ynfante, who in turn handed it to Cruz.

At separate sentencing hearings in late 1991, the district court concluded that although DeLeon and Ynfante had distributed only one ounce (about 28 grams), more than 100 grams of crack later seized from Calderon's apartment was relevant conduct under the Sentencing Guidelines. U.S.S.G. § 1B1.3 (1991). The inclusion of the extra 100 grams caused a four-level increase in the base offense level, resulting in a range of 168 to 210 months' imprisonment. The court sentenced both appellants to the low end of 168 months.

On appeal, the government conceded that the district court had erred in including the Calderon crack as relevant conduct, but contended that the error was harmless because the sentences could be supported by a new theory that had not been raised before the district court. The government maintained that because Ynfante had originally agreed to sell two ounces of crack to Cruz, the additional ounce should count as relevant conduct even though DeLeon and Ynfante had ultimately delivered only one ounce. This court affirmed the convictions but remanded for the district court to "determine whether such a theory is sustainable in law and fact."

On remand, the district court applied the then-current 1994 edition of the guidelines and concluded that the government's new theory was correct. U.S.S.G. § 2D1.1 (1994). The court found that Ynfante and Cruz could have produced the two ounces that they had first agreed to sell. Applying note 12 to guideline § 2D1.1, the court determined that the extra ounce was relevant conduct, thereby putting appellants back at the same sentencing range that they had faced at the original sentencing. The court resentenced each man to 168 months, and they again appeal.

## II.

■ DeLeon's first contention may be dealt with briefly. He maintains that the government should not have been permitted to argue a theory on remand that it had not raised at the initial sentencing. The case on which he relies, however, does not stand for that proposition. In *United States v. Leonzo*, 50 F.3d 1086 (D.C.Cir.1995), the court declined to give the government a "second bite at the apple" when it had not introduced sufficient evidence to support factual findings necessary to its sentencing theory and presented no special circumstances to explain or justify its failure. *Id.* at 1088. Rather than affording the government another chance to marshal its evidence, the court "remand[ed] for resentencing on the existing record." *Id.* Here, the government relied on "the existing record" and did not introduce any new evidence at the resentencing. The remand was occasioned not by the government's failure to meet its burdens of production and persuasion at the original sentencing, but by the

district court's legal error in construing the guidelines. At resentencing, the district court's task was to apply a proper construction of the guidelines to the record already before it. *Leonzo* is thus inapposite.

Turning to the heart of these appeals, appellants contend that the district court improperly applied note 12 of § 2D1.1. The note explains how to determine the amount of drugs chargeable to a defendant when establishing the base offense level. At the time of resentencing, the note read, in part:

> In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount.

U.S.S.G. § 2D1.1 n. 12 (1994). Appellants maintain that the second ounce should not have been included in the court's calculation for two reasons: first, because note 12 applies only to offenses *necessarily* involving negotiation, and distribution is not such an offense; and, second, because there was no "uncompleted distribution" inasmuch as the deal was done once the single ounce had been exchanged for cash. We find neither contention persuasive.

■ Appellants offer no case authority for the proposition that note 12 applies only to offenses necessarily involving negotiation to traffic in drugs. Under their reading, this portion of note 12 is meant for cases of attempt or conspiracy, in which, since there may be no drugs delivered or seized, the court needs an alternative to simply weighing actual drugs to determine the seriousness of the offense. Appellants rely on note 12's origin in note 1 of former guideline § 2D1.4, which was limited to inchoate offenses. When the Sentencing Commission repealed § 2D1.4 and consolidated inchoate drug offenses with the substantive offenses covered by § 2D1.1, the relevant text from former § 2D1.4 n. 1 was moved to note 12. United States Sentencing Guidelines Comm'n, *Guidelines Manual* app. C, amend. 447 (1995). Appellants suggest that note 12 continues to apply only to inchoate offenses, even though § 2D1.1 as a whole also deals with substantive offenses. This argument relies on a faulty premise: note 1 of § 2D1.4

was never limited to inchoate offenses, so its language cannot "continue" to be so limited after being incorporated into note 12 of § 2D1.1. *United States v. Davern*, 970 F.2d 1490, 1493 (6th Cir.1992) (in banc), *cert. denied*, 507 U.S. 923, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993); *United States v. Bradley*, 917 F.2d 601, 604 (1st Cir.1990); *United States v. Garcia*, 889 F.2d 1454, 1456–57 (5th Cir.1989), *cert. denied*, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). Before § 2D1.4 was consolidated with § 2D1.1, note 12—which applied only to substantive offenses—read in part: "If the offense involved negotiation to traffic in a controlled substance, *see* Application Note 1 of the Commentary to § 2D1.4." U.S.S.G. § 2D1.1 n. 12 (1991). Even before the two sections were consolidated, therefore, the phrase "offense involv[ing] negotiation" included the substantive offenses covered by § 2D1.1. We find no basis for limiting the 1994 version of note 12 to inchoate offenses.

■ There remains appellants' contention that note 12 still does not apply because the distribution in the instant case was completed. Although Ynfante and Cruz originally agreed on a two-ounce deal, they maintain that the agreement was superseded by the later agreement to distribute only one ounce. The original agreement, rather than being "uncompleted" within the meaning of note 12, was thus extinguished by the subsequent agreement. The plain meaning of the term "uncompleted" does not resolve the issue; while appellants' construction is plausible on its face, it would also be reasonable to describe as "uncompleted" any agreement to sell two ounces of crack when two ounces were never produced, irrespective of the cause. Moreover, appellants' analysis would produce arbitrary sentencing distinctions among drug defendants. For example, if a defendant agrees to sell some drugs now and more drugs at a later date, and is arrested before the second distribution occurs, he will be sentenced for the total amount of the two agreed-upon distributions. *Bradley*, 917 F.2d at 602–03. Similarly, if a defendant conspires to distribute a large quantity of drugs, but the conspiracy is interrupted after only a smaller quantity has been distributed,

he is sentenced as if he has distributed the total amount that is the object of the conspiracy. *United States v. Gessa,* 971 F.2d 1257, 1262–63 (6th Cir.1992) (in banc). Appellants conceded at oral argument that if the deal had simply fallen through after they had agreed to distribute two ounces, they could have been convicted of attempt and sentenced for the entire agreed-upon amount.

There is no reason to distinguish what actually happened here from these other situations. In determining the seriousness of each of the offenses, there is a policy choice between considering only the actual drugs that changed hands and considering the amount that appellants intended to and were capable of distributing. The Sentencing Guidelines favor the latter approach.[2] *United States v. Crawford,* 991 F.2d 1328, 1333 (7th Cir.1993). Ynfante seeks to distinguish the instant case from the other scenarios because he agreed to reduce the amount of the sale, rather than having the amount reduced by a unilateral act of the government or unavoidable external factors. The distinction is untenable. Had Ynfante refused to agree to the reduction, he could have been convicted and sentenced for attempting to distribute two ounces; his agreement to let the transaction go forward hardly reduces his culpability.

■ Appellants contend that their case should also be distinguished because otherwise the police would have an incentive to offer to purchase huge amounts of drugs with no intention of actually making the purchase. Once an agreement is reached, the police would then plead poverty and make a much smaller purchase. By engaging in such "puffery," appellants claim, police could arbitrarily inflate sentences for relatively minor drug dealers. We disagree. The police cannot unilaterally convert a small-time drug sale

into a more serious transaction.[3] Whatever the police may offer, the key is what the defendant agrees to, and even a wildly optimistic defendant who agrees to supply an extravagant amount is protected by the government's burden under note 12 of showing that he was actually capable of producing that amount. *Cf. Crawford,* 991 F.2d at 1333–34. The district court found that Ynfante and DeLeon were capable of producing a second ounce, and its sentence appropriately reflected their level of culpability.

■ Finally, appellants contend that the district court violated the Ex Post Facto Clause by applying the 1994 edition of the guidelines. As previously discussed, the Sentencing Commission amended the relevant guidelines in 1992 by consolidating § 2D1.4 with § 2D1.1 and rewriting § 2D1.1 n. 12 to incorporate language from former § 2D1.4 n. 1. Because appellants' offenses were committed before 1992, the 1994 guidelines could not constitutionally be applied if the amendment effected a substantive change that adversely affected appellants' sentences. *United States v. Lam Kwong-Wah,* 924 F.2d 298, 304 (D.C.Cir.1991). The two arguments made by appellants, however, both boil down to a contention that we have already rejected: former note 1 applied only to inchoate offenses. Appellants maintain that the old version of note 12 contained only a "cryptic" *see* citation to note 1's method for dealing with inchoate offenses, while the new version expressly incorporates that method into a guideline that deals with substantive offenses. As discussed, ample case law and the text of former note 12 establish that note 1's method applied to substantive offenses before the 1992 amendment, so there can be no prejudice from simply moving the note 1 text into note 12. Appellants also maintain that they were harmed by an alteration in

---

2. Thus, where a defendant considered buying either 125 or 400 grams of heroin, and eventually settled on the lower amount, the extra 275 grams could not be regarded as an uncompleted distribution. *United States v. Podlog,* 35 F.3d 699, 707–08 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 954, 130 L.Ed.2d 897 (1995). In *Podlog,* the defendant never agreed to the larger deal. As the Second Circuit has since reaffirmed, the crucial question is what the defendant agreed and intended to purchase, even if subse-

quent events caused his intention not to be completely fulfilled. *United States v. Ajmal,* 67 F.3d 12, 17–18 (2d Cir.1995).

3. Appellants do not claim "sentencing entrapment," in which police induce a defendant to engage in a deal on a larger scale than that to which he is predisposed. *Cf. United States v. Walls,* 70 F.3d 1323, 1329–30 (D.C.Cir.1995).

the text of note 1 when it was made part of note 12. Note 1 applied to a "defendant [who] is convicted of an offense involving negotiation," while note 12 applies "[i]n an offense involving negotiation." Ynfante suggests that the amendment thereby deleted a "requirement that the defendant be convicted of the negotiation offense." This argument makes sense only on the assumption that "the negotiation offense" subject to note 1 had to be either attempt or conspiracy. As we have rejected that assumption, we conclude that the 1992 amendment effected no substantive change relevant to appellants' case. Our conclusion is borne out by the Sentencing Commission's declaration that the amendment "clarifie[d] and simplifie[d]" the guideline provisions. *Guidelines Manual* app. C, at p. 329 (1995).[4] *See also Crawford,* 991 F.2d at 1332 n. 3; *United States v. Smaw,* 22 F.3d 330, 333 (D.C.Cir.1994).

Accordingly, we affirm the judgments of conviction.

**4.** The Sentencing Commission recently amended note 12 again, effective after the resentencings in appellants' case. *Guidelines Manual* app. C, amend. 518 (1995). Each side contends that the new version supports its reading of the old version. However, unlike the 1992 amendment, this amendment was not described as a mere clarification by the Commission. Nor is amendment 518 among the amendments that can be retroactively applied to reduce a prisoner's sentence. U.S.S.G. § 1B1.10 (1995). We therefore express no opinion on how appellants would be sentenced under the current version of note 12.