**UNITED STATES of America,**
**Appellee,**

v.

**Jerome YOUNG, a/k/a Akbar**
**Muhammed, Appellant.**

**No. 00–3007.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 13, 2001.

Decided May 11, 2001.

---

A. J. Kramer, Federal Public Defender, argued the cause and filed the briefs for appellant.

Thomas S. Rees, Assistant U.S. Attorney, argued the cause for appellee. With

1. *See generally United States v. Gates,* 807 F.2d 1075, 1078 (D.C.Cir.1986) (describing

him on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, John R. Fisher, Mary-Patrice Brown and John Phillip Dominguez, Assistant U.S. Attorneys.

Before: KAREN LeCRAFT HENDERSON, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

In this appeal, Jerome Young challenges a criminal sentence he received in 1991 for conspiracy to manufacture and distribute phencyclidine (PCP). Although Young did not appeal from this sentence when it was first imposed, he now seeks a sentence reduction based on a subsequent amendment to the United States Sentencing Guidelines (U.S.S.G.). The district court denied Young's motion, concluding that the amendment did not affect the manner in which Young's sentence was calculated. We agree and therefore affirm.

I

On December 4, 1989, Young pled guilty to one count of conspiring to manufacture and distribute 100 grams or more of pure PCP, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iv), and to one count of using or carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Judgment at 1. Young's initial sentencing hearing occurred on February 26, 1990. The presentence report (PSR) stated that Young and a co-conspirator were engaged in a PCP manufacturing operation, the first stage of which had produced a quantity of piperidinocyclohexanecarbonitrile (PCC).[1]

PCP manufacturing process).

The report stated—as Young had acknowledged during his plea hearing—that at the time of his arrest Young was in a van, travelling to a location where he could acquire a quantity of phenylmagnesium-chloride (PMC), a chemical he planned to use to convert the PCC into PCP. 1990 PSR ¶ 12; Change of Plea Tr. at 23, 28–32. The police stopped the van, arrested Young, and seized 682 grams of PCC crystals, a bottle containing 35 grams of pure PCP, and a Walther PPK handgun. According to the presentence report, the 682 grams of PCC, when combined with PMC, would have yielded 862 grams of pure PCP. 1990 PSR ¶ 13.[2]

The presentence report calculated the weight of the controlled substance involved in Young's crime by adding the 35 grams of pure PCP seized from Young to the 862 grams of pure PCP that could have been manufactured from the PCC in his possession, producing a total of 897 grams of pure PCP. 1990 PSR ¶ 22; *see United States v. Young*, 89–CR–00307–02, slip op. at 2 (D.D.C. Dec. 15, 1999). The Drug Quantity Table of Sentencing Guideline § 2D1.1(c) specified a base offense level of 34 for a "mixture or substance" containing 300–1000 grams of pure PCP. *See* U.S.S.G. § 2D1.1(c) (1989); *id.* at n. *. To this, the district court applied a two-level upward adjustment for use of a special skill, U.S.S.G. § 3B1.3 (1989), and a two-level downward adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1(a) (1989), leaving Young's offense level un-

changed at 34. 1990 Sentencing Tr. at 6, 24. Based on that offense level, and on the presentence report's calculation of Young's criminal history category, the district court sentenced Young to 188 months' imprisonment on the PCP charge and to a mandatory consecutive term of 60 months on the firearm charge. 1990 Sentencing Tr. at 24–26.

Defendant agreed with the presentence report's description of his offense conduct, and objected neither to the finding that his crime involved 897 grams of pure PCP, nor to the conclusion that this produced a base offense level of 34. 1990 PSR ¶ 18; *id.* at 16. He did object, however, to the two-level upward adjustment for use of a special skill, and ultimately prevailed on that point on appeal. *See United States v. Young*, 932 F.2d 1510, 1515 (D.C.Cir.1991). When the district court resentenced Young on December 18, 1991, the presentence report again stated that he had been arrested with 35 grams of pure PCP and 682 grams of PCC, and that the latter would have produced 862 grams of pure PCP. 1991 PSR ¶ 13. Based on a combined total of 897 grams of pure PCP, the district court again—and again without objection—assigned Young a base offense level of 34 and applied a two-level downward adjustment for acceptance of responsibility. 1991 PSR ¶¶ 22, 27. Young was sentenced to 150 months' imprisonment on the PCP count and to 60 consecutive months on the firearm count.[3] He did not file a direct appeal from the resentencing.

2. The district court's opinion attributes this calculation to the Drug Enforcement Agency chemist who analyzed the seized chemicals. *United States v. Young*, 89–CR–00307–02, slip op. at 2 (D.D.C. Dec. 15, 1999). We also note that at Young's plea hearing, the government stated and Young accepted that the seized PCC, if fully processed, would have yielded 831 grams of pure PCP. The record does not reveal why the weight listed in Young's PSR is different from that stated during the plea

hearing, but Young has alleged neither that the PSR's determination was erroneous nor that the difference adversely affected his sentence.

3. During his resentencing, Young challenged the criminal history category used in his 1990 sentencing proceeding. Although Young had not raised that issue during the appeal from his 1990 sentence, the government and district court agreed that Young's criminal histo-

## II

On November 24, 1998, Young filed a motion to reduce his 1991 sentence with the same district judge who had sentenced him twice before. The motion was filed pursuant to 18 U.S.C. § 3582(c)(2), which permits a court to modify a term of imprisonment "in the case of a defendant who has been sentenced ... based on a sentencing range that has subsequently been lowered by the Sentencing Commission." Young asserted that his sentence should be reduced because of Guideline Amendment 484, which, effective November 1, 1993, altered Application Note 1 to U.S.S.G. § 2D1.1. At the time of Young's 1991 resentencing,[4] Application Note 1 stated: " 'Mixture or substance' as used in this guideline has the same meaning as in 21 U.S.C. § 841." U.S.S.G. § 2D1.1, comment., n.1 (1991). Amendment 484, in relevant part, added that "[m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. app. C, amend. 484. The amendment went on to note that "[e]xamples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance." Id.

Young argued to the district court that, pursuant to Amendment 484, the weight of the PCC should not have been used in determining his offense level. As support, he cited commentary to the amendment which, he contended, clarifies that the term "mixture or substance" does not include the weight of "chemicals seized before the end of processing [that] are not usable in that form because further processing must take place before they can be used." U.S.S.G. app. C, amend. 484, comment. The PCC at issue in this case, he claimed, was such a chemical.

The district court denied Young's motion on two grounds. First, the court held that Amendment 484 does not apply to PCC because PCC is not a material that, in the amendment's words, "must be separated" from PCP before PCP can be used. The commentary's reference to seized chemicals, the court concluded, refers to waste byproducts of the manufacture of a controlled substance and not to precursor chemicals like PCC. Young, slip op. at 3–4.

Second, the district court held that Amendment 484 would not reduce Young's sentence in any event, because the court had not sentenced Young under the provision altered by Amendment 484—namely, Application Note 1 to Guideline § 2D1.1. Rather, Young had been sentenced under Application Note 12, which applies when the amount of drugs seized does not reflect the scale of the offense. The court said that, in applying the latter note, it had based Young's sentence not on the amount of PCP or PCC he possessed, but rather on his capacity to produce a total of 897 grams of pure PCP. Accordingly, whatever changes were wrought by Amendment 484, they were inapplicable to Young's case. Young, slip op. at 5.

---

ry category had been miscalculated, and the court used a recalculated criminal history category to determine the appropriate sentence.

4. "Under § 1B1.11 of the Guidelines, ... resentencing occurs under the version of the Guidelines in effect at the time of resentencing unless such an application would violate the ex post facto clause of ... the Constitu-

tion." United States v. Clark, 8 F.3d 839, 844 (D.C.Cir.1993). There are, in any event, no substantive differences between the 1989 and 1991 versions of the guidelines applicable to Young's sentence. From this point forward, all references will be to the 1991 version unless otherwise noted.

### III

The parties are in accord that the issue presented in this case is a legal one, and hence subject to our de novo review. *See United States v. Drew,* 200 F.3d 871, 876 (D.C.Cir.2000). As we conclude that the district court's judgment was correct even on that standard, we need not consider whether a more deferential standard of review would be appropriate. *See id.* (describing applicable standards of review in Guidelines cases). Moreover, because we agree with the district court's second rationale—that Young was not sentenced under a provision affected by Amendment 484— we also need not consider whether that amendment excludes the weight of a precursor chemical like PCC from the weight of the "mixture or substance" to which the Drug Quantity Table of § 2D1.1(c) applies.

The Drug Quantity Table of Guideline § 2D1.1(c) establishes the base offense level that corresponds to the weight and kind of controlled substance involved in a defendant's offense. As provided in the guideline, "[u]nless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." U.S.S.G. § 2D1.1(c), n.*. The guideline further provides that "[i]n the case of a mixture or substance containing PCP," the court should "use the offense level determined by the entire weight of the mixture or substance, *or* the offense level determined by the weight of the [pure] PCP ..., whichever is greater." *Id.* (emphasis added).

Prior to its 1993 amendment, § 2D1.1 did not define "mixture or substance," other than to state, in Application Note 1, that the term "has the same meaning as in 21 U.S.C. § 841." That statute establishes penalties for crimes involving "mixture[s] or substance[s]" containing specified narcotics, but also does not define the term. The effect of Amendment 484 is to clarify that, in using the Drug Quantity Table, the sentencing court is to exclude from the weight of the "mixture or substance" any "materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. app. C, amend. 484. Hence, if the court had sentenced Young based on the weight of a mixture containing both PCP and PCC, and in doing so had included the weight of the PCC, it would be necessary to determine whether PCC is the kind of material whose exclusion is required by Amendment 484.

■ But it is clear from both the district court's statements and the presentence report that the court did not sentence Young based on the weight of a mixture containing both PCP and PCC. Rather, he was sentenced based on the weight of a quantity of *pure* PCP. *See Young,* slip op. at 2; 1991 PSR ¶ 13. That quantity consisted of the 35 grams of pure PCP seized at the time of his arrest, plus the 862 grams of pure PCP that could have been produced from the amount of PCC also in Young's possession. The resulting total of 897 grams of pure PCP corresponds to an offense level of 34, as set forth in the Drug Quantity Table. *See* § 2D1.1(c)(5) (specifying offense level of 34 for offense involving 300–1000 grams of pure PCP).

As the district court stated, and as the defendant himself conceded below, the court calculated the amount of pure PCP involved in Young's offense not by using Application Note 1 to § 2D1.1, but rather by using Application Note 12. *Young,* slip op. at 5 ("[T]he use of Note 12 was the basis of Young's sentence calculation in this case."); Def.'s Resp. to Gov't's Opp'n to Mot. to Modify Sentence at 2 ("[W]hen this Court initially sentenced the defen-

dant, it determined his offense level by approximating the quantity of PCP that *could be produced* from the 682 grams of precursor chemical, PCC.... *See* § 2D1.1, Application Note 12."). Under that note, "[i]f the amount seized does not reflect the scale of the offense," the court is directed to use Application Note 2 to § 2D1.4. Application Note 2, in turn, instructs the court to "approximate the quantity of the controlled substance," and provides that, in doing so, the court "may consider, for example, ... the size or capability of any laboratory involved." U.S.S.G. § 2D1.4, comment., n.2.

The undisputed facts of this case established that the amount of pure PCP seized from Young, 35 grams, did not reflect the scale of the offense to which he pled guilty: conspiracy to manufacture and distribute 100 grams or more of pure PCP. *See* Judgment at 1. The evidence—which included Young's acknowledgment that he had been en route to obtain the chemicals needed to convert the PCC he had on hand into PCP, *see* Change of Plea Tr. at 23—established that Young was conspiring to manufacture considerably more than those 35 grams. Accordingly, as the district court later explained, it applied Application Note 12 and considered the capability of Young's operation, which in this case was evidenced by the amount of PCC found in his possession. *See Young,* slip op. at 2, 5. The court used that amount to approximate the quantity of the controlled substance Young was conspiring to manufacture: pure PCP. And it was that quantity—the quantity of pure PCP involved—that dictated a base offense level of 34. *See* U.S.S.G. § 2D1.1(c)(5) & n.*.

As this recitation makes clear, the district court did not include the weight of the PCC in the weight of the "mixture or substance" that was used to determine Young's sentence. Hence, neither Application Note 1 nor Amendment 484 applies. Instead, employing Application Notes 12 and 2, the court used the amount of PCC seized from Young as *evidence* of the amount of pure PCP involved in Young's manufacturing conspiracy.[5] Courts may rely on the amount of precursor chemicals found in order to "approximate the quantity of the controlled substance" involved in a manufacturing operation. U.S.S.G. § 2D1.4, comment., n.2. *See, e.g., United States v. Smith,* 240 F.3d 927, 930–31 (11th Cir.2001); *United States v. Becker,* 230 F.3d 1224, 1234–36 (10th Cir.2000); *United States v. Allison,* 63 F.3d 350, 352–53 (5th Cir.1995); *United States v. Basinger,* 60 F.3d 1400, 1409–10 (9th Cir.1995); *United States v. Evans,* 891 F.2d 686, 687–88 (8th Cir.1989). Indeed, Application Note 2's reference to "the size or capability of any laboratory involved" is listed merely as an "example" of the kind of evidence a court may consider in determining the amount of the controlled substance that was the object of an incomplete conspiracy. U.S.S.G. § 2D1.4, comment., n. 2.[6] As we have

---

**5.** *See Young,* slip op. at 2 ("When the defendant was first sentenced the court determined his offense level by approximating the quantity of PCP that could be produced from 682 grams of PCC."); *id.* at 5 ("Young could have easily produced 862 grams of pure PCP with the PCC crystals he had already made once he obtained the necessary [PMC].... Young's production capability was the basis of his sentence."); *see also* Young Br. at 12–13 (conceding that "the district court did not directly use the weight of the PCC in determining

[Young's] offense level," but that the weight of PCC was used to determine the quantity of pure PCP "supposedly capable of being produced from the PCC").

**6.** In 1991, Note 2 was an application note to § 2D1.4, which provided that "if a defendant is convicted of a conspiracy ... to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy ... had been completed." U.S.S.G. § 2D1.4. The Sentencing

previously held, testimony about a conspirator's intentions alone, even without physical evidence, may be sufficient to establish the amount of drugs contemplated as the object of a conspiracy. *See United States v. Lam Kwong–Wah,* 924 F.2d 298, 305–06 & n. 4 (D.C.Cir.1991). Where there is physical evidence, the case is that much stronger.

In sum, the district court did not include the seized PCC in determining the weight of a "mixture or substance" under Application Note 1 to § 2D1.1, but instead used the PCC as evidence to calculate the weight of pure PCP that was the object of Young's conspiracy, as prescribed by Application Note 12 to § 2D1.1 and Application Note 2 to § 2D1.4. As defendant conceded at oral argument, the latter notes were unaffected by Amendment 484. *See Allison,* 63 F.3d at 353 (holding that "Amendment 484 does not speak to the situation in which the district court is sentencing the defendant based on the size and capability of the laboratory involved"). For that reason, Young's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c) must fail. That statute provides, in relevant part, that a court "may *not* modify a term of imprisonment once it has been imposed[,] except that" the court may reduce a prison term "in the case of a defendant· who has been sentenced ... based on a sentencing range that has subsequently been lowered by the Sentencing Commission ... if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

18 U.S.C. § 3582(c) (emphasis added). To implement that provision, the Sentencing Commission promulgated Guideline § 1B1.10, which contains a list of guideline amendments and states that "[i]f none of the amendments listed ... is applicable, a reduction in the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) is not consistent with this policy statement and thus is not authorized." U.S.S.G. § 1B1.10(a), p.s. (2000). Although Amendment 484 is included in the list of amendments, because the amendment is not applicable to Young's case, 18 U.S.C. § 3582(c)(2) does not authorize a reduction in his sentence.

## IV

▮ Young raises a number of additional challenges to his sentence, based not on Amendment 484 but on asserted deficiencies in the court's application of unamended provisions of § 2D1.1 and § 2D1.4.[7] In light of the foregoing, it is plain that those challenges cannot succeed either. As the Sentencing Commission stated in its commentary to § 1B1.10, when adjudicating a motion based on § 3582(c)(2), all "guideline application decisions remain unaffected" other than those subject to the listed amendments. U.S.S.G. § 1B1.10, p.s.,· comment., n.2 (2000); *see United States v. Bravo,* 203 F.3d 778, 780–81 (11th Cir. 2000); *United States v. Wyatt,* 115 F.3d 606, 609 (8th Cir.1997). Because Young

---

Commission deleted § 2D1.4 in 1992, and moved the relevant text of Note 2 to Application Note 12 of § 2D1.1. *See* U.S.S.G. app. C, amend. 447; *United States v. Ynfante,* 78 F.3d 677, 680–81 (D.C.Cir.1996) (holding that amended Note 12 applies to choate as well as inchoate offenses).

7. The principal deficiency Young asserts is that the district court should have calculated the weight of PCP involved in his offense by using the Drug Equivalency Table, U.S.S.G. § 2D1.1, comment., n.10, rather than by using either Application Note 1 or 12 to § 2D1.1.

does not allege that his additional challenges are grounded upon Amendment 484, or upon any other amendment to the Guidelines, we have no cause to consider them further.

**V**

The district court's denial of defendant's motion to modify his sentence is

*Affirmed.*