UNITED STATES of America, Appellee,

v.

William CACCIA, Defendant–Appellant.

No. 1162, Docket 96–1540.

United States Court of Appeals,
Second Circuit.

Argued March 27, 1997.

Decided Aug. 26, 1997.

Darrell B. Fields, The Legal Aid Society, New York City, for Defendant–Appellant.

Alexander H. Shapiro, Asst. U.S. Atty., New York City, Mary Jo White, U.S. Atty., Robert E. Rice, Asst. U.S. Atty., New York City, for Appellee.

Before: NEWMAN and CALABRESI, Circuit Judges, and HURLEY,*

JON O. NEWMAN, Circuit Judge.

This appeal concerns a "missing witness" instruction, several versions of which have been approved, with varying degrees of enthusiasm, in this and other circuits. In this Circuit, one generally acceptable version of a "missing witness" instruction informs the jury that when a material witness is equally available to both parties but is not called to testify by either party, the jury may infer that the testimony of that witness would have been unfavorable to either or both parties. This appeal raises the narrow question of whether this version of the "missing witness" instruction is appropriate where a witness, available for subpoena by both sides, has been interviewed by one side but has refused to be interviewed by the other. This issue arises on an appeal by William Caccia from the August 12, 1996, judgment of the United States District Court for the Southern District of New York (Denise Cote, Judge), convicting him, after a jury trial, of three counts of distributing and possessing, with intent to distribute, cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(C). The jury trial was conducted by then-Chief Judge Domin-

ick L. DiCarlo, of the Court of International Trade, sitting by designation.

We conclude that the District Court's instruction, though inadvisable, was not an abuse of discretion and, in any event, did not prejudice the appellant. We therefore affirm.

## Background

Caccia, an employee of the United States Postal Service, distributed cocaine to a Government informant on three occasions in 1993. The informant, also a Postal Service employee, was assisting Postal Service Inspectors to investigate narcotics distribution in the General Post Office in the Bronx. The informant's relationship with the Government began in February 1993, when, after having been arrested for heroin possession, he agreed to work as an informant in return for the Inspectors' agreement not to advise his Postal Service supervisors of his arrest. Two months later, the informant entered into the first drug transaction with Caccia. Two more transactions were concluded within a month, both recorded by audio surveillance.

At the time of Caccia's trial, the informant was serving a state sentence for armed robbery and drug possession. A few days prior to Caccia's trial, the prosecution disclosed to the Court that it had interviewed the informant, and that he had been brought from a state prison to a federal correctional facility in New York City to be available for questioning by the defense. However, when Caccia's counsel contacted the informant's attorney to schedule an interview, he learned that the informant refused to be interviewed by the defense. The prosecution did not call the informant to testify at Caccia's trial.

The only contested issue at trial was whether Caccia had been entrapped by the Government, acting through the informant. Caccia contends that if the informant had testified, he would have revealed whether, and to what extent, he induced Caccia into selling cocaine. Such testimony, Caccia maintains, would have undermined the Government's theory that he was predisposed,

* Honorable Denis R. Hurley, of the United States District Court for the Eastern District of New York, sitting by designation.

and thereby could have raised a reasonable doubt about his guilt. Responding to the Government's contention that his inability to interview the witness before trial did not prevent him from calling the witness to the stand, Caccia asserts that putting the informant on the stand without knowing the likely content of his testimony would have constituted ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). At the close of the Government's case, Caccia rested without presenting any evidence.

Defense counsel requested a version of the missing witness charge that would (i) permit the jury to draw the inference against any party failing to call a material witness if it was "peculiarly within the power" of that party to produce the witness, but (ii) not permit the jury to draw the inference against either party if the witness was equally available to both sides.[1] The Government objected to the proposed charge, arguing that the informant was equally available to both sides and not peculiarly within the power of the prosecution.

After a colloquy, Judge DiCarlo rejected Caccia's proposal and instead gave the following instruction:

> Both the Government and the defendant have the same power to subpoena witnesses to testify on their behalf. If you find that a witness was equally available to the Government and the defendant, then you may infer that the testimony of the uncalled witness might have been unfavorable to the Government or to the defendant or to both.
>
> You should remember that there is no duty on either side to call a witness whose testimony would merely repeat or duplicate testimony already in evidence. You should also recall my earlier instruction that the law never compels a defendant in

a criminal case to call any witnesses or produce any evidence in his behalf.

Contrary to the defendant's position, he thus permitted an inference against either or both sides if the jury found the witness equally available to the prosecution and the defense, and, also contrary to the defendant's position, he did not make the availability of an adverse inference depend on a party's peculiar control over the witness. His instruction referred explicitly to each side's opportunity to subpoena a witness, but left it to counsel to use their summations to highlight any other circumstances that might bear more specifically on the issue of the witness's unavailability to either side.

### Discussion

On appeal, Caccia appears to challenge the District Court decision to give an "equal availability" version of a missing witness instruction, especially its reference to each side's subpoena power. He also appears to contend that the Court should have given his requested "control" version of a missing witness charge. Finally, he contends that allowing the jury to draw an inference against a criminal defendant because a material witness is not called improperly shifts the burden of proof to the defendant.

### A. Jury Charge

■■ The most appropriate version of a "missing witness" instruction, where the facts warrant it, permits the jury to draw an adverse inference against a party failing to call a witness when the witness's testimony would be material and the witness is peculiarly within the control of that party. *See United States v. Torres,* 845 F.2d 1165, 1169 (2d Cir.1988). In such circumstances, it is more likely than not that the testimony of an uncalled witness would have been unfavorable to the party with such control, and a jury

---

1. Defense counsel's charge request tracked, almost verbatim, the model instruction in 1 Edward J. Devitt *et al., Federal Jury Practice and Instructions* § 14.15 (4th ed.1992):

    If it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, failure to call that witness may give rise to an inference that his testimony

would be unfavorable to that party. However, no such conclusion should be drawn by you with regard to a witness who is equally available to both parties, or where the witness's testimony would be merely cumulative.

 The jury will always bear in mind that the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

may reasonably draw such an inference. *See* 8A James Wm. Moore, *et al., Moore's Federal Practice* ¶ 30.09[5] (2d ed. rev.1995) ("*Moore's Federal Practice*"). The requirement that the witness be "peculiarly within the control" of the party ensures that the inference is not available to be drawn against a party who, in comparison with an adversary, lacks meaningful or pragmatic access to the witness. *Id.*

■ In addition to the "control" version of a missing witness charge, we have also outlined options available to the trial court where a witness is equally available to both sides, but is not called by either side. In such circumstances, the court has discretion to (1) give no instruction and leave the entire subject to summations, *see United States v. Adeniji,* 31 F.3d 58, 65 (2d Cir.1994), (2) instruct the jury that no unfavorable inference may be drawn against either side, *see United States v. Bahna,* 68 F.3d 19, 22 (2d Cir.1995), or (3) instruct the jury that an adverse inference may be drawn against either or both sides, *see id.* Such an instruction is sometimes referred to as an "uncalled witness" charge. *See generally* 1 Leonard B. Sand *et al., Modern Federal Jury Instructions* ¶ 6.04, at 6–24 (rev.1996) (discussing options and recommending instruction that no inference should be drawn). Prof. Wigmore expressed the view that permitting an inference against either party is the "more logical view," *see* II Wigmore, *Evidence* § 288, at 207–08 (Chadbourn rev.1979), a view that we have more recently doubted, *see Bahna,* 68 F.3d at 22. Indeed, we have suggested that where a witness is equally available to both sides, a missing witness charge is "inappropriate." *See Adeniji,* 31 F.3d at 65.

■ In the pending case, the instruction permitting an inference against either or both parties was especially inappropriate because of the circumstances countering the equal availability of the witness. Though the witness was physically available to the defense, that is not the sole criterion of equal availability, *see United States v. Saa,* 859 F.2d 1067, 1076 (2d Cir.1988); *Torres,* 845 F.2d at 1171; *United States v. Rollins,* 487 F.2d 409, 412 (2d Cir.1973) (" '[A]vailability'

of a witness … depend[s] … on all the facts and circumstances bearing upon the witness's relation to the parties, rather than merely on physical presence or accessibility."). The witness had assisted the Government as an informant and had expressed unwillingness to speak to defense counsel before trial. *See Saa,* 859 F.2d at 1076 (semble) (Government informant who refused to submit to pretrial interview by defense was not "meaningfully 'available' " as witness for defense, though equal availability instruction given).

■ In these circumstances, though the witness, having ended a relationship with the Government two years previously, was not so peculiarly within the Government's control as to require the defendant's requested instruction, *see United States v. Sorrentino,* 72 F.3d 294, 296 (2d Cir.1995), the trial judge would have been well advised either to refrain from giving an "equal availability" instruction or to instruct that no inference should be drawn. Nevertheless, no prejudice arose warranting a retrial.

■ In the first place, the giving of missing witness instructions is generally a matter left to the discretion of the trial judge. *See Torres,* 845 F.2d at 1170–71; *United States v. Erb,* 543 F.2d 438, 445 (2d Cir.1976). Moreover, in this case the recorded conversations of Caccia's sales to the informant provide better evidence than the informant's recollections as to whether there was any substance to appellant's claim of entrapment. These recordings provided the jury with the actual words spoken by the informant to Caccia, which revealed minimal, if any, inducement, and Caccia's words to the informant, which indicated an immediate readiness to sell. The absence of the informant's testimonial recollection of these conversations could not have prejudiced the defendant. Even if the jury drew an inference against Caccia that the informant's testimony would have been adverse to the defendant, an inference permitted by the charge, that inference would have been harmless in view of the undisputed recorded evidence of how the transactions occurred.

Appellant's challenge to the wording of the "equal availability" instruction overstates the matter by contending that Judge DiCarlo instructed the jury that the informant was equally available to both sides. On the contrary, the instruction left it to the jury to determine *whether* the uncalled witness was equally available, and permitted an adverse inference only upon such a finding. Though highlighting both sides' subpoena power, without cautioning that availability depended on all the circumstances was ill-advised, no prejudice resulted.

## B. Constitutional Challenge

Caccia contends that the "equal availability" instruction, especially when viewed in light of the prosecutor's summation, permitted the jury to conclude that the defendant had an obligation to present evidence, shifted the burden of proof to the defendant, and deprived him of the presumption of innocence. We disagree.

We have frequently stated that it is permissible to instruct jurors that they may draw an adverse inference against either party for the failure to call a material witness in a criminal case. *See, e.g., Bahna,* 68 F.3d at 22; *United States v. Nichols,* 912 F.2d 598, 601 (2d Cir.1990); *Erb,* 543 F.2d at 445. We have also approved prosecutor's summations that urged the drawing of such an inference against the defendant. In *United States v. Bubar,* 567 F.2d 192 (2d Cir.1977), we ruled that there was no violation of the defendant's constitutional rights when a prosecutor commented on the failure of the defendant to produce evidence to rebut the government's case or to support his own claims. Holding that "[t]he prosecutor is entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's case," *id.* at 199, we also noted that "[a] constitutional violation occurs *only if* either the defendant alone has the information to contradict the government evidence referred to or the jury 'naturally and necessarily' would interpret the summation as a comment on the failure of the accused to testify," *id.* (emphasis added). *See also United States v. Gotchis,* 803 F.2d 74, 79–81 (2d Cir.1986).

As these cases demonstrate, there is no deprivation of a defendant's constitutional rights by permitting the jury to draw an adverse inference against him for his failure to call an available material witness. Such an instruction neither violates the defendant's right to have the prosecution bear the burden of proof as to all elements of the crime, nor rests on an unreasonable conclusion from the facts. *See Francis v. Franklin,* 471 U.S. 307, 314, 105 S.Ct. 1965, 1970, 85 L.Ed.2d 344 (1985) (permissive inference does not deprive defendant of due process provided the inference is justified by reason and common sense in light of the proven facts). In the pending case, the witness was available to the defendant though he was not realistically as available to the defendant as to the Government. That unequal availability makes the issue of whether to permit the inference somewhat closer, but we nonetheless conclude that no constitutional violation occurred, especially in light of Judge DiCarlo's cautionary instruction. Tempering any risk that the missing witness charge might be misunderstood by the jury, Judge DiCarlo explicitly instructed that the defendant had no legal obligation to produce any witnesses. This reminder adequately preserved the constitutional requirement that the burden of proof is never on the defendant.

## Conclusion

The judgment of the District Court is affirmed.