**UNITED STATES of America,**
**Appellee,**

v.

**Maria Rosalba GUEVARA, also known as Sealed Defendant # 1, also known as Maria Giboyeaux, also known as Maria R. Rojo–Alvarez, also known as Rosalba Rojo–Alvarez, also known as Awilda Caravallo, Defendant–Appellant,**

Luz Marina Cardenas–Callejas, also known as Sealed Defendant # 2; Monica Callejas–Cardenas, also known as Sealed Defendant # 3; Magaly Maria Duran–Jacome, also known as Sealed Defendant # 4; Arles De La Pava Salgado, also known as Sealed Defendant # 5; Luis Fernando Sanchez–Arce, also known as Sealed aka, also known as Sealed Defendant # 6, also known as Christobal Ramirez; Ruben Dario Gutierrez–Gutierrez, also known as Sealed Defendant # 7; Rosa Eugenia Henao–Perez, also known as Sealed Defendant # 8; Javier Antonio Diaz–Mejia, also known as Sealed Defendant # 9, also known as The Jeweler; Diego F. Obonaga–Quiceno, also known as Sealed Defendant # 10; Oscar D. Gomez–Gil, also known as Sealed Defendant # 11; Juan Carlos Lopez–Ortega, also known as Sealed Defendant # 12; Alvaro Julian Chalarca–Espinal, also known as Sealed Defendant # 13; Maria Del Pilar Casas–Garzon, also known as Sealed Defendant # 14; Faustino Castillo–Medina; also known as Sealed Defendant # 15; Bleidy Rua–Cardona, also known as Sealed Defendant # 16, also known as Bleidy Botero; Tranquilina Leguizamon–Diaz, also known as Sealed Defendant # 17; Julio Eduardo Linares, also known as Sealed Defendant # 18, Defendants.

No. 02–1426.

United States Court of Appeals,
Second Circuit.

May 21, 2004.

Richard S. Hartunian, Assistant United States Attorney, for Glenn T. Suddaby, United States Attorney for the Northern District of New York, for Appellee.

Bruce R. Bryan, Syracuse, N.Y., for Defendant–Appellant.

Present: MINER, KATZMANN, Circuit Judges, and TSOUCALAS,* Senior Judge.

## SUMMARY ORDER

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court be and hereby is AFFIRMED.

Defendant-appellant Maria Rosalba Guevara appeals from the judgment of the United States District Court for the Northern District of New York (McAvoy, J.), convicting her, following a jury trial, of, *inter alia*, conspiring to distribute and possess with intent to distribute heroin and possessing with intent to distribute

* The Honorable Nicholas Tsoucalas, of the United States Court of International Trade, sitting by designation.

heroin, and sentencing her to a term of life imprisonment. The parties' familiarity with the facts and the law is here assumed. For the reasons that follow, we affirm the judgment of the district court.

■ Guevara's first argument is that the district court erred in refusing to charge the defenses of public authority and entrapment by estoppel to the jury. We have held that while "[a] criminal defendant is entitled to a jury charge that reflects any defense theory for which there is a foundation in evidence," *United States v. Johnson,* 994 F.2d 980, 988 (2d Cir. 1993), the court "is under no duty to give the requested jury charge" where "the defendant's evidence is insufficient as a matter of law to establish the defense," *United States v. Paul,* 110 F.3d 869, 871 (2d Cir.1997). Here, Guevara's testimony that Luz Jaramillo, another informant, recruited her to act as an informant in the government's sting operation is not sufficient to establish either the public authority or entrapment defense because there is no evidence in the record that Jaramillo had the actual authority to recruit Guevara. *See United States v. Duggan,* 743 F.2d 59, 84 (2d Cir.1984) (rejecting the view expressed by the D.C. Circuit in *United States v. Barker,* 546 F.2d 940 (D.C.Cir.1976), that "a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real.");[1] *see also, e.g., United States v. Fulcher,* 250 F.3d 244, 253–54 (4th Cir. 2001) (requiring actual authority as an element of the public authority defense); *United States v. Pitt,* 193 F.3d 751, 758 (3d Cir.1999) (same); *United States v. Matta–Ballesteros,* 71 F.3d 754, 770 n. 12 (9th Cir.1995) (same); *United States v. Holmquist,* 36 F.3d 154, 161 nn. 6–7 (1st Cir. 1994) (same); *United States v. Baptista–Rodriguez,* 17 F.3d 1354, 1368 & n. 18 (11th Cir.1994) (same); *United States v. Spires,* 79 F.3d 464, 466–67 (5th Cir.1996) (requiring actual authority as an element of the entrapment by estoppel defense); *United States v. Collins,* 61 F.3d 1379, 1385 (9th Cir.1995) (same). We also do not think the evidence presented at trial supports Guevara's contention, raised for the first time on appeal, that the agents implicitly through their conduct (but not explicitly through their words) authorized her to act as an informant. We therefore conclude, upon *de novo* review, *see United States v. Crowley,* 236 F.3d 104, 111 (2d Cir.2000), that the district court committed no error in declining Guevara's requests that the jury be charged on the defenses of public authority and entrapment by estoppel.

■ Guevara's second argument is that the district court's jury instruction as to the credibility of her testimony was unbalanced. Specifically, the district court instructed the jury:

> The defendant is a competent witness whose testimony should be judged by the same standards as the testimony of any other witness. You may consider the fact that the defendant's interest in the outcome of the case creates a motive for false testimony, but it by no means follows that the defendant is not capable of telling the truth.

Upon *de novo* review, *see United States v. Bok,* 156 F.3d 157, 160 (2d Cir.1998), we

---

1. We suggested in *United States v. Abcasis,* 45 F.3d 39, 44–45 (2d Cir.1995), that *Duggan* addresses the entrapment by estoppel defense. Other circuits, by contrast, have interpreted *Duggan* and *Barker* as referring to the public authority defense. *See, e.g., United States v. Fulcher,* 250 F.3d 244, 252 (4th Cir.2001); *United States v. Pitt,* 193 F.3d 751, 756 (3d Cir.1999). In our view, the holding in *Duggan,* regarding actual and apparent authority, applies equally to both defenses.

find that the court's balancing language (to wit: "The defendant is a competent witness whose testimony should be judged by the same standards as the testimony of any other witness," and "[I]t by no means follows that the defendant is not capable of telling the truth") was sufficient to counteract the court's cautionary statements regarding Guevara's truthfulness. *See United States v. Vega*, 589 F.2d 1147, 1154 & n. 6 (2d Cir.1978) (approving similar balancing language). We also think that the court's subsequent instruction—"[h]owever, if you find that the defendant, when previously questioned, gave a false statement in an attempt to exculpate or exonerate herself, you may consider such false statement as circumstantial evidence from which consciousness of guilt may be inferred"—was proper, *see, e.g., United States v. Glenn*, 312 F.3d 58, 69 (2d Cir. 2002), and was not, as Guevara contends, "an extensive negative instruction."

■ Guevara's third argument is that the district court improperly attributed to her 300, as opposed to 100, grams of heroin with respect to the September 2, 1999 transaction, which she brokered. There is no dispute that the deal for the sale and purchase of 300 grams of heroin brokered by Guevara was not consummated for this amount solely as a result of the government's unilateral decision to purchase a reduced quantity, that is 100 grams, of heroin. Because Guevara intended to and was capable of brokering a deal for 300 grams of heroin, and because, in any event, she was a broker and not a dealer, we find that the district court correctly held her accountable for the higher amount originally contemplated. *See* U.S.S.G. § 2D1.1 n. 12 ("In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level *unless* the sale is completed *and* the amount delivered more

accurately reflects the scale of the offense.... [I]n a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government ...." (emphasis added)); *see also United States v. Ynfante*, 78 F.3d 677, 681 (D.C.Cir.1996) (holding that the quantity of drugs that the defendant had originally agreed to sell to undercover agents was attributable to him notwithstanding the fact that, at the agents' request, he ultimately agreed to complete the deal for a lesser amount); *United States v. Podlog*, 35 F.3d 699, 707 (2d Cir.1994) (holding that the quantity of drugs negotiated was properly attributed to the broker even though the seller ultimately could not supply the requested amount); *United States v. Alaga*, 995 F.2d 380, 383 (2d Cir.1993) ("[T]he negotiated quantity is conclusive *except* where the defendant was the putative *seller* and neither intended nor was able to produce that amount." (emphasis added)). As the D.C. Circuit explained in *Ynfante*, "Had Ynfante refused to agree to the reduction, he could have been convicted and sentenced for attempt to distribute two ounces; his agreement to let the transaction go forward [for one ounce] hardly reduces his culpability." 78 F.3d at 681. *Podlog*, in which we attributed only the lower quantity of drugs "ultimately agreed upon" to one of the defendants, is distinguishable because that particular defendant had never actually agreed to purchase a higher quantity but had stated instead that he needed either 125 grams or 400 grams of cocaine. 35 F.3d at 708. Here, by contract, Guevara conclusively brokered a deal involving 300 grams of heroin.

■ Guevara's fourth argument is that the district court erred in failing to give a missing witness charge to the jury based

on the government's failure to call Luz Jaramillo. Although, as an informant, Jaramillo had a special relationship with the government, it was within the discretion of the district court, *see United States v. Mittelstaedt*, 31 F.3d 1208, 1215 (2d Cir. 1994), to conclude that it was not "peculiarly within [the government's] power" to call Jaramillo, *United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir.1988). As the district court found, "the government had offered to make Luz [Jaramillo] available for the defendant to call at trial," which offer the defendant, initially, declined. Nor is there any indication in the record that Jaramillo refused to be interviewed by Guevara. *Cf. Torres*, 845 F.2d at 1170. We therefore hold that the district court committed no error in denying Guevara's request for a missing witness charge.

■ Guevara's fifth argument is that the district court erred in instructing the jury *not to be concerned with why* Luz Jaramillo was not called as a witness. In *United States v. Caccia*, 122 F.3d 136 (2d Cir.1997), we held that "where a witness is equally available to both sides but is not called by either side .... the court has discretion to (1) give no instruction and leave the entire subject to summations, (2) instruct the jury that no unfavorable inference may be drawn against either side, or (3) instruct the jury that an adverse inference may be drawn against either or both sides." *Id.* at 139 (citations omitted). Notwithstanding these guidelines, Guevara maintains that the district court's instruction was improper because, even assuming *arguendo* that it was not peculiarly within the government's power to call Jaramillo, Jaramillo was not equally available to both sides. But in *Caccia*, we also stated that where "the witness [is] available to the defendant though ... not realistically as available to the defendant as to the Government," *id.* at 140, "the trial judge would

be [ ] well advised either to refrain from giving an 'equal availability' instruction or to instruct that no inference should be drawn," *id.* at 139. The language challenged by Guevara is wholly in line with this guidance, as the instruction, at most, informs the jury that no adverse inference should be drawn against either side. We therefore conclude that the instruction was proper.

■ Guevara's sixth argument is that, in light of her testimony that she was working as a confidential informant, the evidence was insufficient to establish that she had the necessary intent to commit the crime charged. At trial, however, the government presented both direct and circumstantial evidence of Guevara's intent, including (1) video and audio tapes of conversations between Guevara and the undercover agents, showing Guevara's desire to profit through her activities as a drug dealer and green card broker, (2) Guevara's exculpatory statements following her December 9, 1999 arrest, and (3) Guevara's suspicions that Investigator Ortega was working as an informant. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Guevara possessed the requisite intent. *See United States v. Pimentel*, 346 F.3d 285, 295 (2d Cir.2003). There is therefore no basis for disturbing Guevara's conviction on sufficiency grounds.

■ Guevara's final argument is that the government committed prosecutorial misconduct by withholding information regarding Jaramillo's location from the defense. There is, however, no evidence in the record that the government intentionally withheld such information from Guevara. On the contrary, as noted *supra*, the district court expressly found that, prior to trial, the government offered to make Jaramillo available to Guevara. We there-

fore decline to find prosecutorial misconduct.

Accordingly, we hereby **AFFIRM** the judgment of the district court.