09-4926-cr
United States v. Daniel

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9th day of November, two thousand and ten.

PRESENT:

> JOHN M. WALKER, JR.,
> JOSÉ A. CABRANES,
> *Circuit Judges*,
> JOHN G. KOELTL,
> *District Judge.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

  *Appellee*,

  v.                                                No. 09-4926-cr

IVANISE DANIEL,

  *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

---

* The Honorable John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

1

FOR APPELLANT:                    DAVID A. LEWIS, Federal Defenders of New York, Inc.
                                  Appeals Bureau, New York, NY.

FOR APPELLEE:                     MICHAEL L. YAEGER, Assistant United States Attorney
                                  (Loretta E. Lynch, United States Attorney, *on the brief*, and
                                  David C. James, Assistant United States Attorney, *of counsel*),
                                  Office of the United States Attorney, Eastern District of New
                                  York, Brooklyn, NY.

Appeal from a November 6, 2009 judgment entered in the United States District Court for the Eastern District of New York (Frederic Block, *Judge*).

**UPON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment be **AFFIRMED**.

A jury found defendant-appellant Ivanise Daniel guilty of one count of misappropriation of postal funds in violation of 18 U.S.C. § 1711, and one count of making false entries and reports of moneys in violation of 18 U.S.C. § 2073. On appeal Daniel contends that her convictions must be set aside on account of allegedly inappropriate comments that the District Court made to the jury.

## I.    Background

Ivanise Daniel was employed as a window clerk at the Linden Hill Station of the United States Post Office in Flushing, New York. Window clerks are tasked with facilitating the sale of postal products (stamps, envelopes, etc.) to the general public. To accomplish this task, they are trained to use "point of sale" (POS) cash register computers to conduct and record all sales. Window clerks begin each day by retrieving roughly $100 from their respective cash drawers, which are housed in the station's safe overnight. This $100 is to be kept on hand so that proper change will always be available. During the day sales are rung up on the POS computer, and at the close of business, the POS computer prints out a report of the total amount of sales made that day. Before heading home, the clerks tally their daily take and turn the money over to a supervisor or "closeout clerk," who then compares these proceeds with the daily report generated by the POS computer to ensure that there are no discrepancies. If all goes according to plan, the window clerk should have $100 remaining after turning over the daily revenues to the supervisor. This $100 is placed back in the safe, and the whole process starts over again the following day. The window clerk puts the $100 of retained money in the station's safe overnight.

From October 2001 to March 2008, the Linden Hill Station lost between $200 and $5000 each month in missing inventory. In March 2006, the Postal Service began an investigation of these chronic losses. A review of transaction data taken from Linden Hill's POS computers cast suspicion on three window clerks, including Daniel. The Postal Service's Office of Inspector General then set up hidden video cameras to monitor these three clerks. The video surveillance captured Daniel engaging in all sorts of inappropriate conduct. For instance, she frequently made a sale without

2

scanning it into the computer; instead, she would press the machine's "no sale" button in order to access the cash drawer. Daniel also made a habit of entering a transaction into the computer for less than the actual sale that took place. Finally, Daniel often left her cash drawer open after making sales so she could deposit and remove cash when making a subsequent sale without recording it. All told, the 14 weeks of video footage documented suspect transactions involving over $1100 in merchandise. Daniel and the two other window clerks under suspicion were suspended in May 2008.

At trial, the government relied primarily, but not exclusively, on the video evidence the Postal Service collected against Daniel. Following many of the improper transactions, Daniel made handwritten notes on a notepad. Daniel's supervisor testified that there was no business purpose for these notes, and that Daniel provided no explanation when asked to account for this practice. The government also called witnesses to testify that (1) Daniel was properly trained to use the POS computers, and (2) the persistent losses at the Linden Hill Station were dramatically reduced after Daniel and the two other employees were suspended from duty in May 2008.

Daniel took the stand on her own behalf. She acknowledged making the errors recorded in the surveillance footage, but denied stealing any money. Instead she explained that she had failed to follow proper protocols merely because she had been "tired and frustrated." Daniel's primary defense was that there was no direct evidence that she stole any money. There was no direct video evidence that Daniel pocketed money from her cash drawer—although there were no cameras placed in the vault where the cash drawers were deposited each night—and none of Daniel's coworkers testified about seeing her improperly taking money from her register.

The jury credited the government's version of events and found Daniel guilty on both counts. This appeal followed.

## II.    Discussion

Daniel argues that she was deprived of a fair trial by certain comments that the District Court made when instructing the jury. Daniel never raised any objections to the jury instructions before the District Court, so we review her claims for plain error. "A finding of plain error requires (1) error, (2) that is plain, and (3) that affects the defendant's substantial rights." *United States v. Gomez*, 580 F.3d 94, 100 (2d Cir. 2009) (quotation marks omitted).

Daniel takes issue with the following comments the District Court made to the jury:
You know, I told you that inferences are okay, you may. Guesswork and speculation is not okay. Sometimes it's hard to draw a line between the two, but it's very important. And sometimes jurors speculate, why wasn't this witness called? Maybe the witness is dead, for all you know. You know, you have no idea of that, but you can speculate.

3

Why didn't the government do this? Why didn't the government do that? That's speculation. And I find that, when people speculate out of curiosity, more often than not, they're wrong and then they feel terrible, you know, when they share with me afterwards. I come talk to you and have a chance to ask me any questions you have on your mind, after you finish with your deliberations.

And then I had one situation where somebody said they considered this. And I said that's pure speculation. And I've got news for you, if you speculate, that is wrong, and they felt terrible. So you can use your good common sense. Inferences to be drawn from the actual facts in the case is one thing. But idle speculation is something which is totally, totally wrong, and resist the temptation.

Ask yourself when you're going through your deliberative process, are you speculating about things that are not in evidence, or is this really an inference that you can draw from the facts in evidence? And I think you understand the point that I'm driving home.

The common situation where people speculate is they say, well, why wasn't this person, whose name is mentioned during the trial, called as a witness? You have no idea. It may be good and sufficient reason. The most obvious reason is the person is dead or not available, or who knows what. So that's an example of idle speculation.

Daniel asserts that these instructions contain two clear errors that unduly prejudiced the jury. First, Daniel claims that the District Court's instruction to the jury not to speculate about the absence of witnesses was improper and undercut her defense. The decision whether to give "missing witness" instructions is "generally a matter left to the discretion of the trial judge." *United States v. Caccia*, 122 F.3d 136, 139 (2d Cir. 1997). Where, as here, a witness is equally available to both sides, but is not called by either side, the district court has the discretion to "instruct the jury that no unfavorable inference may be drawn against either side." *Id.* Daniel insists that this instruction was inappropriate given the facts of her particular case because her defense was predicated on the fact that the government failed to produce any eyewitness who saw her actually pocketing Postal Service funds. But the District Court's missing witness instruction only told the jury not to speculate as to why certain witnesses were not called; in no way did it diminish the government's burden of proof or undermine Daniel's defense. Indeed, the District Court specifically told the jury that "the burden of proof is always on the government. The defendant's [sic] not required to call any witnesses or offer any evidence because they're presumed to be innocent."

Daniel's other contention is that the District Court's instructions erroneously left the jury with the impression that they would be forced to explain their verdict to the District Court and

4

would be subject to reprimand if their decision-making did not meet with the approval of the judge. *Cf. United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) (explaining that in our legal system "nullifying jurors have been protected from being called to account for their verdicts."). This is a misperception of what the District Court actually told the jury. The District Court's instructions made clear that, at the conclusion of the trial, the jurors would have an opportunity to ask questions of the judge, *not* the other way around. While the District Court's anecdote about a juror on a previous case who was made to feel "terrible" about improper speculation may have been inartful, nothing about it can be reasonably construed as conveying to the jury that they might somehow be punished for reaching a verdict in a certain manner.

In sum, the District Court did not err, much less clearly err, in instructing the jury. Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT,

Catherine O'Hagan Wolfe, Clerk of Court

5