22-2007-pr
*Johnson v. Griffin*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of January, two thousand twenty-four.

Present:

> AMALYA L. KEARSE,
> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

_____

ERIK JOHNSON,

> *Petitioner-Appellant*,

v.                                                                            22-2007-pr

PATRICK GRIFFIN,

> *Respondent-Appellee*.

_____

| | |
|---|---|
| For Petitioner-Appellant: | PAUL SKIP LAISURE, Garden City, NY |
| For Respondent-Appellee: | DANIELLE M. O'BOYLE (John M. Castellano, *on the brief*), Assistant District Attorneys, *for* Melinda Katz, District Attorney for Queens County, Kew Gardens, NY |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Margo K. Brodie, *Chief Judge*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Petitioner-Appellant Erik Johnson ("Johnson") appeals from a judgment of the United States District Court for the Eastern District of New York (Margo K. Brodie, *Chief Judge*), entered on August 16, 2022, denying his *pro se* petition for a writ of habeas corpus challenging his 2010 second-degree murder conviction in New York state court. Following a jury trial, Johnson was convicted of the 2006 murder of his then-ex-girlfriend, Asma Johnson ("Asma"), for which he was sentenced to 25 years to life in prison. On direct appeal, Johnson argued that (1) the trial court's refusal to give a missing witness jury instruction based on the prosecution's decision not to call Asma's ex-boyfriend and the father of two of her children, Thomas Livingston, as a witness at trial violated his Fourteenth Amendment right to a fair trial; (2) the trial court's admission of hearsay testimony that Johnson had previously abused and threatened Asma's life violated his Sixth and Fourteenth Amendment rights; and (3) his trial counsel rendered ineffective assistance in violation of the Sixth and Fourteenth Amendments. The Appellate Division upheld Johnson's conviction, reasoning that any error was harmless due to the overwhelming evidence of his guilt. *See People v. Johnson*, 943 N.Y.S.2d 910, 911 (2d Dep't 2012).

In 2013, Johnson filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, raising the same claims and additionally arguing that the court's failure to give a missing witness instruction denied his Sixth Amendment Confrontation Clause rights. The district court denied the petition and issued a certificate of appealability. *Johnson v. Griffin*, No. 13CV4337MKBSMG, 2022 WL 3347771, at *18–19 (E.D.N.Y. Aug. 12, 2022). Johnson, now represented by counsel, appeals, pressing only the first two claims, while arguing that his trial

counsel rendered ineffective assistance only to excuse procedural default rather than as a stand-alone claim. We assume the parties' familiarity with the case.

Section 2254(a) provides that a federal court may grant a writ of habeas corpus to a state criminal defendant "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner must show that the challenged state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d). A constitutional error is considered harmless in the habeas context unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).[1] "We review *de novo* a district court's decision to deny a defendant's petition for a writ of habeas corpus under 28 U.S.C. § 2254." *Murray v. Noeth*, 32 F.4th 154, 157 (2d Cir.), *cert. denied,* 143 S. Ct. 270 (2022).

Here, Johnson not only has to show that the Appellate Division was incorrect in concluding that any error was harmless, but also that such a determination was unreasonable. Cognizant of that highly deferential standard of review, for the reasons explained below, we conclude that the Appellate Division's harmlessness determination was not unreasonable. We also explain why Johnson's claims are meritless in any event.

## I. Missing Witness Instruction

At trial, Asma's and Livingston's then-10-year-old daughter, Najiyah Livingston ("Najiyah"), testified as follows. On the day of Asma's murder, Livingston picked Najiyah and

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

her brother up from Asma's building around 5:45 p.m. and drove them to school to play math games. As the children were leaving the apartment, Johnson pushed his way inside. While later driving the children back to the apartment, Livingston received a call from Asma; Livingston told Najiyah that Asma told him not to bring the children back to the apartment. Livingston asked Najiyah who was at the apartment with Asma, and Najiyah responded that Johnson was there. Livingston then took the children to the apartment of Gloria Tippins ("Gloria"), Johnson's aunt, where they arrived around 8:10 p.m. Shauna Tippins ("Shauna"), Gloria's daughter who was present at the time, testified at trial that Livingston asked her and Gloria to check on Asma and Johnson because they were fighting; they left to check on Asma at 8:16 p.m. When the Tippinses arrived at Asma's apartment building, which was two buildings away from Gloria's, they saw Johnson walking down from the second floor, where Asma's apartment was. Johnson told them that he did something "wrong" or "stupid" and pointed up to Asma's apartment unit; he then left the building. App'x at 270. The Tippinses found the door of Asma's apartment ajar and discovered Asma's body lying in a pool of blood. They ran out of the apartment building to get help, at which point Shauna approached Johnson and asked, "What did you do?" *Id.* Johnson did not respond; he merely "looked back." *Id.* Defense counsel objected to Najiyah's and Shauna's testimony about Livingston's statements on hearsay grounds. Although Livingston was present in the courtroom throughout the trial, neither party called him, and the trial court denied Johnson's request to give a missing witness jury instruction.

Johnson argues that the denial of his request for a missing witness jury instruction, and the admission of Livingston's hearsay testimony, violated his Sixth and Fourteenth Amendment rights. For the reasons set forth below, we find neither argument persuasive.

4

### A. Fourteenth Amendment

The failure to give an appropriate jury instruction can rise to the level of a Fourteenth Amendment violation if it "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *accord Blazic v. Henderson*, 900 F.2d 534, 540 (2d Cir. 1990) ("In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law."). In other words, the failure to give an instruction may be constitutional error if "there is a substantial likelihood that a properly instructed jury would have [acquitted the defendant]." *Davis v. Strack*, 270 F.3d 111, 131 (2d Cir. 2001); *see also Blazic*, 900 F.2d at 542 (finding no constitutional error where giving the omitted instruction "would not have altered the result of the trial").

Johnson cites no state or federal law or constitutional principle requiring a missing witness instruction in these circumstances. Indeed, it is doubtful that such an instruction would have been appropriate here since the defense could have easily called Livingston, who was present at trial. *See United States v. Caccia*, 122 F.3d 136, 139 (2d Cir. 1997) ("[W]here a witness is equally available to both sides, a missing witness charge is inappropriate."). But even if failing to give the instruction was error, it would not have likely altered the outcome of the trial and thus either does not implicate the Fourteenth Amendment, and is thus not cognizable, if a state law error, or was harmless if a federal constitutional error. Giving the instruction would have permitted (but not required) the jury to draw an adverse inference that had Livingston testified, his testimony would

have contradicted the hearsay testimony of his statements elicited through Najiyah and Shauna.[2] The two hearsay statements at issue were relatively innocuous[3] and likely had little bearing on the verdict given the other voluminous and strong evidence of Johnson's guilt: he had physically abused Asma and had been stalking and harassing her outside of her apartment shortly before her murder; he aggressively entered Asma's apartment a couple of hours before her murder when she was home alone; Asma's neighbor heard a woman scream, "help me, help me, this man is killing me" mere minutes before the Tippinses encountered him leaving Asma's building, App'x at 270; on his way out of the building, he said he did something "wrong" or "stupid" while pointing up to Asma's unit, where her body was lying in a pool of blood, *id.*; DNA from an anal swab taken from Asma matched his male line; and he fled the state after the incident, lied about his whereabouts, and was hiding under a sofa when the police found him. It was thus reasonable for the Appellate Division to conclude that any error was harmless.

---

[2] To the extent Johnson argues that the failure to give the missing witness instruction prejudiced him because he was unable to cross-examine Livingston about Livingston's alleged prior abuse of Asma and her order of protection against Livingston, which would have allowed the jury to draw an inference that Livingston was the perpetrator, that theory of harm is unrelated to the complained-of error: the failure to give the requested instruction. The instruction would not have cured that harm, as it would not have allowed the jury to hear about Livingston's prior abuse or draw any adverse inference therefrom. The only remedy that would have cured this purported prejudice would have been defense counsel calling Livingston as a witness, which it could have but did not do. And if the complained-of error is instead the admission of the challenged hearsay statements, that claim is distinct from one focused on the failure to give the requested instruction. To the extent Johnson challenges the admission of the hearsay statements, such a claim is properly considered under a Sixth Amendment Confrontation Clause rubric, which is discussed below.

[3] Although Johnson repeatedly states in his brief that Najiyah's testimony describing the phone call in the car contained double hearsay because she "testi[fied] that Asma told Mr. Livingston on the phone that Mr. Johnson was there," Appellant's Br. at 31; *see also id.* at 25, 37—which would be important testimony because it would "plac[e] Mr. Johnson in Asma's apartment just before her body was found," *id.* at 55—he seriously misdescribes the record. Najiyah testified that she was not party to the phone call with Asma, and she did not testify that Livingston told her that Asma said Johnson was at the apartment. Further, Asma's reported statement—not to bring the children back—was a command, not a declarative statement that could have been offered for its truth, and therefore cannot be viewed as embedded hearsay. *See United States v. Dawkins*, 999 F.3d 767, 789 (2d Cir. 2021) ("[A]n order, *i.e.*, an imperative rather than a declarative statement, . . . [is] offered not for its truth, but for the fact that it was said. It [i]s therefore not hearsay.").

**B. Sixth Amendment**

Johnson also argues that the admission of Livingston's hearsay statements "brings a Sixth Amendment dimension to [his] claim of error concerning the refusal to give a missing witness instruction." Appellant's Br. at 36–37. The government argues that Johnson procedurally defaulted this claim by failing to raise it on direct appeal. But even if we assume there was no default, we find the argument unpersuasive on the merits.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S Const. amend. VI. "The Sixth Amendment . . . prohibits the introduction of testimonial statements by a nontestifying witness, unless the witness is unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Ohio v. Clark*, 576 U.S. 237, 243 (2015). Thus, "the Confrontation Clause's reach" is limited to "testimonial statements." *Michigan v. Bryant*, 562 U.S. 344, 354 (2011). Statements are testimonial when, "in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *Clark*, 576 U.S. at 245. "An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text . . . reflects an especially acute concern with a specific type of out-of-court statement." *Crawford v. Washington*, 541 U.S. 36, 51 (2004).

As an initial matter, Johnson frames his claim as being anchored to the failure to give a missing witness instruction, but that failure has no connection to the Confrontation Clause. Even construing his claim as instead challenging the admission of the hearsay statements, rather than the failure to give the instruction, it still fails because Livingston's statements elicited at trial are not testimonial. His statement to Najiyah that Asma said that she did not want him to bring Najiyah

7

and her brother to the apartment was not testimonial because it was nothing more than a logistical comment to his then-seven-year-old daughter; when "viewed objectively," its "primary purpose" was not "to create an out-of-court substitute for trial testimony." *Clark*, 576 U.S. at 245. His statement to Shauna that Asma and Johnson were arguing was similarly non-testimonial but rather was intended to explain why he was asking Shauna and Gloria to check on them. Neither statement was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *United States v. Feliz*, 467 F.3d 227, 233 (2d Cir. 2006), especially considering that at that point, Asma's body had not yet been discovered and thus Livingston was not aware of the crime, let alone the possibility of future legal proceedings.

Livingston's statements were accordingly not subject to the Confrontation Clause's strictures, and even if they were, the overwhelming evidence against Johnson renders any error harmless, as the Appellate Division reasonably concluded.

## II. Hearsay Testimony Regarding Prior Abuse

At trial, the prosecution called Yahaira Cabrera, Asma's neighbor, and Angela Willis, Asma's close friend, who testified (over defense counsel's objections) to statements Asma made indicating that Johnson had abused her and threatened her life. Specifically, Cabrera testified that the week before Asma's murder, Asma told her that Johnson had beaten her up, that she did not want to have him arrested because he was on parole, and she was scared to report him to the police. Cabrera also testified that the day before Asma's murder, Asma said that she wanted to leave Johnson, but he told her that if she stopped seeing him, he would "hurt her son" and "would come back and kill her," making her fearful to leave him. Dist. Ct. R. 917–19. Willis testified that Asma told her that Johnson beat her and was "becoming possessive," *id.* at 941, but that she did not want

8

to report him to the police because Johnson was on parole. Johnson argues that the admission of this hearsay testimony violated his Fourteenth Amendment rights.

Even if the admission of these statements was erroneous under New York law, *see People v. Maher*, 89 N.Y.2d 456, 460–62 (1997), the statements likely were not dispositive of the conviction and thus do not carry the requisite constitutional dimension for a federal habeas claim,[4] *Blazic*, 900 F.2d at 542. As the district court noted,

> the jury heard other evidence, besides [Asma's] statements, that suggested [Johnson] and [Asma] had an abusive relationship, including Najiyah's testimony that [Johnson] had pushed his way into the apartment on numerous occasions, pushing [Asma] on one occasion and arguing with her on another, and Cabrera's testimony that she had seen bruises on [Asma's] face and seen [Johnson] banging on [Asma's] door and yelling "open the f**cking door."

*Johnson*, 2022 WL 3347771, at *16. Cabrera and another neighbor also testified that Johnson had loitered outside Asma's apartment unit and banged on her door while calling her name several times in the weeks leading up to her murder. This was all properly admissible evidence of Johnson's prior abuse and stalking—and, as detailed above, there was also ample other evidence of Johnson's guilt. Johnson has therefore failed to show any prejudice from the alleged error.

\* \* \*

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

---

[4] Although the district court liberally construed Johnson's *pro se* petition as also raising a Sixth Amendment Confrontation Clause claim based on these evidentiary rulings, *see Johnson*, 2022 WL 3347771, at *6, Johnson did not raise this claim in his counseled brief before this Court, so we do not address it.

9